# UNITED STATES COURT OF APPEALS
## TENTH CIRCUIT

CLARISSA MARIE MARS,      )
                                )
     Petitioner/Appellant,    )
                                )
v.                             )       No. 24-6038
                                )       W.D. Okl.  No.
TAMIKA WHITE, WARDEN,   )       CIV 23-606-JD
AND THE ATTORNEY         )
GENERAL OF THE STATE     )
OF OKLAHOMA,           )
                                )
     Respondents/Appellees.  )

---

## BRIEF OF PETITIONER/APPELLANT
## AND REQUEST FOR A CERTIFICATE OF APPEALABILITY

---

David Autry, OBA #11600
1021 N.W. 16th Street
Oklahoma City, OK 73106
(405) 521-9600
(405) 521-9669 [fax]
dbautry77@gmail.com

Lawyer for Petitioner/Appellant,
CLARISSA MARIE MARS

ORAL ARGUMENT NOT REQUESTED
Digital/Scanned Documents Attached

July 8, 2024

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES...................................................................................iv

PRIOR OR RELATED APPEALS...........................................................................1

PARTIES TO THE PROCEEDING..........................................................................1

STATEMENT OF JURISDICTION.........................................................................1

STATEMENT OF THE ISSUES.............................................................................2

STATEMENT OF THE CASE/STATEMENT OF THE FACTS...........................2

A.  State court proceedings......................................................................2

      1.  State court charge......................................................................2

      2.  *McGirt*-based state habeas petition...........................................3

      3.  State application for post-conviction relief – Ms. Mars's
conviction is vacated for lack of subject matter jurisdiction in the
state court, per *McGirt* and an unbroken line of Oklahoma law which
permits challenges to subject matter jurisdiction to be raised at any
time, including for the first time on collateral review...............................5

      4.  Precedent is overruled wholesale – *State ex rel. Matloff
v. Wallace*...................................................................................7

      5.  After forfeiting its right to appeal, the state cites *Wallace*
to "undo" the final order in Ms. Mars's case, despite the starkly
different procedural postures between the two cases...............................7

      6.  The Grady County district court rejects the state's
motion to vacate............................................................................8

7.  The OCCA reverses the district court and orders Ms. Mars's conviction and sentence reinstated.................................................9

B.  The federal habeas action...................................................................10

SUMMARY OF THE ARGUMENTS.........................................................12

**ARGUMENT**.........................................................................................**14**

**I.  MS. MARS EXHAUSTED HER STATE REMEDIES WITH RESPECT TO HER DUE PROCESS, EQUAL PROTECTION, AND EX POST FACTO CLAIMS**............................................................**14**

A.  Standard of review...................................................................14

B,.  Portion of the record where the issue was raised and ruled upon.......................................................................15

C.  Discussion...............................................................................15

**II.  THE DISTRICT COURT RULED ERRONEOUSLY THAT MS. MARS'S SUBSTANTIVE *McGirt* CLAIM WAS NOT RAISED IN A TIMELY BASIS BECAUSE *McGirt* IS NOT RETROACTIVE**..............**24**

A.  Standard of review...................................................................24

B.  Portion of the record where the issue was raised and ruled upon.......................................................................24

C.  Discussion...............................................................................25

**III.  A CERTIFICATE OF APPEALABILITY SHOULD BE GRANTED ON MS. MARS'S FEDERAL DUE PROCESS CLAIM AND HER *McGirt* RETROACTIVITY CLAIM**..................................**27**

A.  Standard of review...................................................................28

B.  Portion of the issue was raised and ruled upon,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,29

C.  Discussion......................................................................................29

CONCLUSION............................................................................................31

STATEMENT RELATING TO ORAL ARGUMENT...........................................31

CERTIFICATE OF ELECTRONIC SERVICE.......................................................31

CERTIFICATE OF DIGITAL SUBMISSIONS.....................................................32

CERTIFICATE OF COMPLIANCE....................................................................32

Attachments:

1) Report and Recommendation (Doc. 12) filed October 25, 2023

2) Respondent's Objection to Report and Recommendation (Doc. 14) filed November 8, 2023

3) Order Denying to Adopt Report and Recommendation, etc. and Ruling on Motion to Dismiss and Petition, as well as Denying the Certificate of Appealability, filed February 21, 2024 (Doc. 16)

4) Judgment (Doc. 17) filed February 21, 2024

5) Notice of Appeal (Doc. 18) filed March 5, 2024

# TABLE OF AUTHORITIES

**PAGE**

**Cases:**

*Allen v. Zavares,* 568 F.3d 1197 (10th Cir. 2009)....................................................15

*Baldwin v. Reese,* 541 U.S. 27 (2004).............................................................19, 21

*Bland v. Sirmons,* 459 F.3d 999 (10th Cir. 1998)....................................................16

*Bosse v. State,* 484 P.3d 286 (Okl. Cr. 2021)................................................5-6, 9, 10

*Bosse v. State,* 495 P.3d 669 (Okl. Cr. 2021).............................................................7

*Bosse v. State,* 499 P.3d 771 (Okl. Cr. 2021).............................................................7

*Burger v. Scott,* 317 F.3d 1133 (10th Cir. 2003).......................................................24

*Dever v. Kansas State Penitentiary,* 36 F.3d 1531 (1994).......................................16

*Dutton v. Dixon,* 757 P.2d 376 (Okl. Cr. 1988), *overruled,*
*Cartwright v. State,* 778 P.2d 479 (Okl. Cr. 1989).................................................18

*Equality Foundation of Cincinnati v. Cincinnati,*
525 U.S. 943 (1998)(Stevens, J., respecting the
denial of *certiorari*)................................................................................................27

*Fairchild v. Workman,* 579 F.3d 1134 (10th Cir. 2009).........................................15

*Fuxton v. State,* No. PCD-2022-
286................................................................................................................................18

*Gonzales v. Tafoya,* No. CIV-02-396 WJ/KBM,
2005 WL 8165913 (D.N.M. Fen. 1, 2005).......................................................22, 23

*Graham v. White,* ___F.4th___, No. 23-5069 (slip op.)
(10th Cir. May 17, 2024)(published)...........................................................13, 24, 30

*Grant v. Royal,* 886 F.3d 874 (10th Cir. 2018)........................................................15

*Harris v. Dinwiddie,* 642 F.3d 902 (10th Cir. 2011)...............................................27

*McGirt v. Oklahoma,* 591 U.S.___, 140 S.Ct. 2452 (2020).......1, 3-7, 11-14, 24-31

*Miller-El v. Cockrell,* 537 U.S. 322 (2003).......................................................28, 30

*Montez v. McKenna,* 208 F.3d 862 (10th Cir. 2000)...............................................28

*Nichols v. Sullivan,* 867 F.3d 1250 (10th Cir. 1989)..............................................16

*O'Sullivan v. Boerckel,* 526 U.S. 838 (1999)........................................................16

*Pacheco v. Habti,* 62 F.4th 1233 (10th Cir. 2023)..................................................27

*Parish v. Oklahoma,* No. 21-467 (*certiorari denied*, January 10, 2022)..........14, 26

*Pendergrast v. Clements,* 699 F.3d 1182 (10th Cir. 2012)......................................23

*Picard v. Connor,* 404 U.S. 270 (1971)...................................................................16

*Sharp v. Murphy,* 591 U.S.___, 140 S.Ct. 2412 (2020), *affirming*
*Murphy v. Royal,* 875 F.3d 896 (10th Cir. 2017).....................................4, 13, 25-26

*Slack v. McDaniel,* 529 U.S. 473 (2000)................................................................28

*State ex rel. Matloff v. Wallace,* 497 P.3d 686 (Okl. Cr. 2021).........7-10, 14, 25-26

*State v. Misak,* PR-2022-370 (Okl, Cr. April 18, 2023)
(unpublished)...............................................................................................9, 10, 20

*Tennard v. Dretke,* 542 U.S. 274 (2004)................................................................28

*Wood v. State,* No. PCD-2022-550 .......................................................................18

**Statutes:**

28 U.S.C. § 1291 ...........................................................................................2

28 U.S.C. 2253(a) ..........................................................................................2

28 U.S.C. § 2241 ....................................................................................2, 11, 28

28 U.S.C. § 2253( c) .......................................................................................28

28 U.S.C. § 2254 ....................................................................................2, 11, 28

28 U.S.C. § 2254(b)(1)(A) ...............................................................................15

28 U.S.C. 2244(d)(1)(D) .................................................................................27

28 U.S.C. § 2244(d)(1)(A) ...............................................................................27

28 U.S.C. § 2244(d)(2) ...................................................................................27

**Court Rules:**

Rule 9.7(A)(5), *Rules of the Oklahoma Court of Criminal Appeals,*
Tit. 22, Ch. 18, App. ......................................................................................18

Rule 10.4(A), *Rules of the Oklahoma Court of Criminal Appeals,*
Tit. 22, Ch. 18 App. ................................................................................19, 22

**Constitutional Provisions:**

U.S. Const. Amend. XIV ...........................................................................passim

**UNITED STATES COURT OF APPEALS**
**TENTH CIRCUIT**

| | | |
|---|---|---|
| CLARISSA MARIE MARS, | ) | |
| | ) | |
| Petitioner/Appellant, | ) | |
| | ) | No.  24-6038 |
| v. | ) | No. CV-23-606-JD |
| | ) | (lower docket) |
| TAMIKA WHITE, WARDEN, | ) | |
| and the ATTORNEY GENERAL | ) | |
| OF THE STATE OF OKLAHOMA, | ) | |
| | ) | |
| Respondents/Appellees. | ) | |

**PRIOR OR RELATED APPEALS**

There are no prior or related appeals with respect to Ms. Mars.

**PARTIES TO THE PROCEEDINGS**

Clarissa Marie Mars, an individual, is the Petitioner/Appellant.  Tamika

White, Warden, and the Attorney General of the State of Oklahoma, are the

Appellees.

**CITATIONS TO THE RECORD**

Citations to the appellate record will be (Appx.), followed by the page

number.

**STATEMENT OF JURISDICTION**

This is an appeal taken from what amounts to a denial of a petition filed

1

under 28 U.S.C. §§ 2254 and 2241, and the district court's decision to dismiss the petition based on procedural considerations.  This Court has jurisdiction under 28 U.S.C. §§ 1291 and 2253(a).

## STATEMENT OF THE ISSUES

1.  Did Ms. Mars exhaust her available state remedies with respect to her due process, equal protection, and *ex post facto* claims based on *McGirt v. Oklahoma,* 591 U.S.___, 140 S.Ct. 2452 (2020) and the Oklahoma Court of Criminal Appeals' (OCCA) refusal to follow its own law and its own rules in reinstating her conviction, even though Oklahoma failed to appeal or otherwise appropriately challenge the final order granting post-conviction relief?

3.  Does *McGirt* apply retroactively to cases on collateral review?

3.  Should a certificate of appealabilty be granted on these two issues?

## STATEMENT OF THE CASE/STATEMENT OF THE FACTS

**A.  State court proceedings**

**1.  State court charge**

Ms. Mars, who was then a teenager, pleaded guilty in the district court of Garvin County, Oklahoma to a single count of lewd or indecent acts with a child under the age of 16.  The victim was a 15 year old female.  The plea was entered on November 23, 2015.  Petitioner was sentenced to 10 years imprisonment.  All

but the first 9 months of the term was suspended.  (Appx. 22-25, 364-384)  Her

conviction became final on December 3, 2015.  She did not move to withdraw her

guilty plea, and thus filed no *certiorari* appeal to the OCCA challenging it. (Appx.

951-957)

An application to revoke Ms. Mars's suspended sentence for violating

certain conditions of her probation was later filed.  Petitioner admitted to the

violations.  On July 25, 2017, the state district court revoked 5 years of her

suspended sentence.  (Appx. 404-406, 411-415, 416-420)

Two applications for review of sentence were filed in the state district court

by Ms. Mars in 2018 and 2019.  Both were denied.  (Appx. 421-431)

### 2.  *McGirt* **- based state habeas petition**

The Supreme Court decided *McGirt v. Oklahoma* 591 U.S.___, 140 S.Ct.

2452, 2459, 2468, 2479  (2020) on July 9, 2020.  McGirt, a state prisoner and an

Indian, had committed his offense (sexual abuse of a minor) within the Creek

Reservation.  The *McGirt* majority held that because Congress had not

disestablished the Creek Reservation, the crime occurred in Indian country.  The

federal government had exclusive jurisdiction to prosecute McGirt under the

Major Crimes Act.  Oklahoma had no jurisdiction.

Like Petitioner, McGirt did not raise his subject matter jurisdictional

3

challenge until he filed an application for post-conviction relief in state court.  In

what could be termed *McGirt's* companion (or predecessor) case, *Sharp v.*

*Murphy,* 591 U.S.___, 140 S.Ct. 2412 (2020), *affirming Murphy v. Royal,* 875

F.3d 896 (10th Cir. 2017), the state death row petitioner first raised the Indian

country jurisdictional argument in his *second* state application for post-conviction

relief, but had his state murder conviction and death sentence vacated under the

authority of *McGirt*.

The day after *McGirt* was decided, Ms. Mars, represented by counsel, filed a

petition for writ of habeas corpus in the district court of Pottawatomie County,

Oklahoma.  She was confined at the Mabel Bassett Correctional Center there.  It

was argued Petitioner's state conviction was void under *McGirt*, since she was a

member of the Citizen Pottawatomie Nation, and the crime of conviction was

committed within the Chickasaw Reservation, which, like the Creek Reservation,

had not been disestablished by Congress.  (Appx. 432-442, Exhs. 1-6, Appx. 465-

480)

The state moved to dismiss the habeas petition because  Ms. Mars failed to

pursue a direct appeal; the only avenue available to her was an application for

post-conviction relief in Garvin County, where she had been convicted..  (Appx.

325-363)  Petitioner filed a response to the state's motion.  (Appx.  481-486, 487-

530 [Exhibits]))

At a hearing conducted on July 31, 2020, the district court of Pottawatomie County denied the state's motion to dismiss. (Appx. 626-666) The state requested the order be stayed so it could be challenged through a writ of prohibition in the OCCA. A stay was granted. (Appx. 591-595)

The state sought extraordinary relief in OCCA case number PR-2020-526. (Appx. 596-630) With the court's permission, Ms. Mars, through her lawyers, filed a response. (Appx. 631-647) The OCCA granted the state's application for extraordinary relief, holding that for Ms. Mars to challenge her conviction under *McGirt*, an application for post-conviction relief should be filed in Garvin County. (Appx. 654-658)

**3. State application for post-conviction relief – Ms. Mars's conviction is vacated for lack of subject matter jurisdiction in the state court, per *McGirt* and an unbroken line of Oklahoma law which permitted challenges to subject matter jurisdiction to be raised at any time, including for the first time on collateral review.**

On October 13, 2020, Petitioner, through counsel, filed an application for post-conviction relief in the district court of Garvin County, relying on *McGirt*. (Appx. 67-81) The state opposed the application. (Appx. 82-92, 93-102 [Exhibits])

The OCCA issued its initial decision in *Bosse v. State,* 484 P.3d 286 (Okl.

5

Cr. 2021) on March 11, 2021.  The court ruled a *McGirt* challenge to a state

conviction could be raised at any time, including for the first time in an application

for post-conviction relief; such a challenge was one of subject matter jurisdiction.

For many decades, the OCCA ruled that challenges to subject matter jurisdiction

are never waived.  It was noted also that the newly-minted *McGirt* opinion opened

a "previously unavailable legal basis for this claim."  (Appx. 286-307)

Issuance of the mandate in *Bosse* was stayed for 20 days.  The stay was

extended on March 31, 2021 until such time as the court could rule whether the

state should be permitted to file a rehearing petition.  The OCCA denied the state's

motion and issued the mandate in *Bosse* on April 7, 2021.  (Appx.  953-954)

After *Bosse* was decided, but before the mandate was issued, the district

court of Garvin County (Misak, J.) granted Petitioner's *McGirt*-based application

for post-conviction relief and ordered her immediate release.  The state court had

no subject matter jurisdiction, per *Bosse*.[1]  The state district court entered its order

on March 30, 2021.  (Appx. 177)  Ms. Mars was released from state custody the

same day.  (Appx. 177)  The issuance of the mandate in *Bosse* shortly after Ms.

Mars was granted relief validated the district court's order.

---

[1] The state stipulated Ms. Mars is an Indian, and her crime was committed within the still-established Chickasaw Reservation.  (Appx. 751-752)

In response to the order vacating Ms. Mars's conviction and sentence, the state did nothing. It did not seek a stay of the district court's order pending any appeal. Nor did the state initiate any appeal or other available appellate challenge. (Appx. 954-955)

### 4. Precedent is overturned wholesale – *State ex rel. Matloff v. Wallace*

On August 12, 2021, long after the state's time to appeal the order granting Ms. Mars post-conviction relief had elapsed, the OCCA did an about-face and overruled decades of its own law in *State ex rel. Matloff v. Wallace,* 497 P.3d 686, 689 (Okl. Cr. 2021). *Wallace* held that, instead of establishing a rule of subject matter jurisdiction, *McGirt* merely announced a rule of "criminal procedure" that could not be applied retroactively in collateral proceedings. After *Wallace* was announced, *Bosse* was nullified and withdrawn, banished from the reporter services. *Bosse v. State,* 499 P.3d 771, 774 (Okl. Cr. 2021); *Bosse v. State,* 495 P.3d 669 (Okl. Cr. 2021).

In *Wallace,* the state sought a stay of the district court's order granting post-conviction relief to the real party in interest, Clifton Parish. The state perfected a timely post-conviction appeal, unlike in Ms. Mars's case, where all appellate remedies in compliance with Oklahoma law were defaulted through inaction.

### 5. After forfeiting its right to appeal, the state cites *Wallace* to "undo"

**the final order in Ms. Mars's case, despite the starkly different procedural**
**postures between the two cases.**

On August 24, 2021, the state, relying on *Wallace*, filed a motion to vacate

the district court's order granting post-conviction relief. (Appx. 105-116) Ms.

Mars, through counsel, entered a special appearance and moved to strike the

state's motion because it had waived its right to appeal through its own indolence.

(Appx. 117-124) An untimely motion to vacate after the time for an appeal has

expired was unknown in Oklahoma law. It was no substitute for an appeal, the

right to which the state had long given up. (Appx. 117-124)

In her motion to strike, Ms. Mars argued retroactive application of *Wallace*

to her case would violate the *ex post facto* prohibitions of the United States and

Oklahoma Constitutions, and would also "violate [her] due process and equal

protection rights." In addition, it was contended that vacating an order from which

the state had neglected to take an appeal would "make a mockery of the

Constitution" and was heedless of "numerous statutory and procedural bars."

(Appx. 122-123)

**6. The Garvin County district court rejects the state's motion to vacate.**

On March 31, 2022, the state district court denied the state's motion to

vacate. As alluded to, in contrast to the procedural history in *Wallace,* the state

did not: 1) request a stay of the order; 2) petition for a writ of prohibition or other extraordinary relief; or 3) appeal the order under the Oklahoma Post-Conviction Procedures Act.  The court concluded the state's "lack of action led to [the] court's order becoming final," and therefore no longer subject to attack.  (Appx. 142-151)

**7.  The OCCA reverses the district court and orders Ms. Mars's conviction and sentence reinstated.**

After being denied in the district court, the state, on April 22, 2022, sought a writ of prohibition or, alternatively, a writ of mandamus in the OCCA.  The state asserted the district court's denial of its motion to vacate should be reversed on the authority of *Wallace*.  As required by court rule, the state appended to its petition the district court's order denying the  motion to vacate.  (Appx.  156-170)    The OCCA granted the state's petition for extraordinary relief by a 3-2 vote. Ms. Mars's case was remanded to the district court of Garvin County, and her conviction and sentence were reinstated.  Relying on *Wallace,* a "new" procedural rule that, by the OCCA's own logic, could not itself be applied retroactively (as Judge Lumpkin's dissent stated), the majority held the granting of post-conviction relief was "judicially unauthorized" because of "misdirection" created by the OCCA itself with its initial *Bosse* decision.  (Appx. 198-203)

This questionable conclusion was reached even though Judge Misak's order

was based on *Bosse's* then-existing precedent favorable to Ms. Mars, and the state had waived every avenue available to appeal or challenge the district court's order. Although Judge Misak's grant of post-conviction relief was based on then- or soon-to-be-precedent (*Bosse,* before and after the mandate issued, and before the opinion was withdrawn), the order was found, retroactively (irony of ironies), to be in error. (Appx. 198-203)

The two dissenting judges adopted the reasoning of Judge Misak's denial of the state's motion to vacate – the state failed to seek a stay of the district court's order, and failed to exercise its right to appeal. (Appx. 204-208, 212-223) This was in marked contrast to *Wallace*, where a timely appellate challenge was made. (Appx. 204-208, 212-2231)

Based on the OCCA's order in *State v. Misak, supra,* Ms. Mars's conviction and sentence were reinstated. (Appx. 224-227)

**B. The federal habeas action**

On July 13, 2023, Ms. Mars filed a petition for writ of habeas corpus in federal court. 28 U.S.C. § 2254, 2241. A supporting brief was also filed. She contended: 1) that her Fourteenth Amendment due process and equal protection rights, and her right to be free from *ex post facto* laws, were violated when the OCCA ignored its own procedures and law to order her conviction and sentence

10

reinstated; and 2) that *McGirt* applied retroactively to cases on collateral review. (Appx. 5-21, 22-307 [Exhibits], 308-322)

The Oklahoma Attorney General filed a pre-answer motion to dismiss. (Appx. 325-328)  In pertinent part, the state argued Petitioner failed to exhaust her state remedies with respect to her due process, equal protection, and *ex post facto* challenges to the state's motion to vacate.  Per the state, while Ms. Mars's motion to strike raised these arguments, it was not before the OCCA. Petitioner did not seek to respond to the state's petition for writ of prohibition.  (Appx. 360-362, 944-947)

Against the remaining claim, the state argued *McGirt* was not retroactive to cases on collateral review.  (Appx. 965-968)  Although not relevant here, the state maintained the federal habeas petition was untimely; there had been no tolling of the one-year period of limitation governing §§ 2254 and 2241 actions.

Petitioner filed a response to Oklahoma's motion to dismiss.  (Appx.  893-904)  United States Magistrate Judge Gary Purcell issued a report and recommendation (R&R) that the motion be denied.  (Appx. 905-922)

District Judge Dishman rejected the report and recommendation, granted the state's motion to dismiss and denied a certificate of appealability.  (Appx.  949-969)  The court held Ms. Mars had not exhausted her due process, equal

11

protection, and *ex post facto* claims.  They were not "fairly presented" to the state appellate court.  (Appx. 958-965)  The district court also concluded *McGirt* does not apply retroactively, and established no "new" jurisdictional rule.  (Appx. 965-968)

Ms. Mars filed a timely notice of appeal.  (Appx.  971-972)

## SUMMARY OF THE ARGUMENTS

1.  The district court found erroneously that Ms. Mars failed to exhaust her available state remedies with respect to her due process, equal protection and *ex post facto* claims addressing the manner in which the OCCA ordered her conviction and sentence reinstated .  This was after the state waived its right to appeal the order granting post-conviction relief.  These constitutional arguments were made in the state district court in response to the state's motion to vacate. They were inherent in the state district court's order denying the motion to vacate, and in the OCCA's opinion granting the state's application for extraordinary relief.  Petitioner's federal constitutional arguments were mentioned explicitly in Judge Lumpkin's dissent, showing there was "fair presentation" of the issues to the appellate court.

There was no "available" avenue requiring Ms. Mars to respond to the state's prohibition/mandamus action.  Since Petitioner prevailed in the state

district court, there was no need to even contemplate a federal habeas action until the OCCA ruled.  The unique procedural history of this case was not taken into sufficient account by the federal district court.

Moreover, Ms. Mars's state district court filing ("motion to strike") was included in the record before the OCCA, placing the constitutional issues raised in the habeas petition before the state court of last resort.

2.  The defendants in both *McGirt* and *Murphy* had their state convictions set aside on substantive jurisdictional grounds, even thought the Indian country issue was not raised until collateral review.  *McGirt* is not a rule of criminal procedure only.  It is a subject matter jurisdictional rule that applies retroactively.

3.  A certificate of appealability should be granted on these two issues. Reasonable jurists could certainly disagree on the exhaustion issue.  In fact, reasonable jurists did disagree.  The magistrate judge, in a reasoned opinion supported with at least analogous authority, and taking into account the unique procedural posture of Ms. Mars's case, found she had exhausted her state remedies.  While the district court disagreed, it never labeled the contrary conclusion reached by the magistrate judge unreasonable.

Despite this Court's recent opinion in *Graham v. White*, ___F.4th___ , No. 23-5069 (slip op.)(May 17, 2024)(published), which reversed the district court's

judgment in favor of the same due process issue that was raised in Ms. Mars's

habeas petition, a certificate of appealability should be granted.  A petition for

rehearing *en banc* is pending, and the Supreme Court could weigh in on the issue

at some point.  Reasonable jurists could differ on this score, as shown by Judge

Eagan's order granting relief to Ms. Graham.

A certificate of appealability should also be granted on the question whether

*McGirt's* jurisdictional rule is substantive and non-waivable, or a matter of

criminal procedure only.  The Supreme Court has not resolved this question

definitively.[2]  The retroactivity issue is raised here in order to preserve the record.

## ARGUMENT

### I.  MS. MARS EXHAUSTED HER STATE REMEDIES WITH RESPECT TO HER DUE PROCESS, EQUAL PROTECTION, AND *EX POST FACTO* CLAIMS.

**A.  Standard of Review:**  In determining whether a habeas petitioner has

exhausted available state remedies for federal review of a constitutional claim, the

argument must be fairly presented in the state court.  This means the petitioner has

---

[2]  The real party in interest in *Wallace*, Clifton Parish, sought certiorari review on the question whether *McGirt* constitutes a principle of subject matter jurisdiction that can be raised in collateral proceedings, and whether the OCCA was wrong in labeling it a mere procedural change which is waived or forfeited if raised for the first time on post-conviction review.  The Supreme Court denied certiorari.  *Parish v. Oklahoma,* No. 21-467 (January 10, 2022).  Of course, a denial of certiorari does not constitute a ruling on the merits.

14

raised the substance of the claim. *Grant v. Royal,* 886 F.3d 874, 780 (10th Cir. 2018); *Fairchild v. Workman,* 579 F.3d 1134, 1171 (10th Cir. 2009)("fair presentation" requirement).  The dismissal of a habeas application for failure to exhaust state remedies is reviewed *de novo*.  *Allen v. Zavares,* 568 F.3d 1197, 1200 (10th Cir. 2009).

**B.  Portion of the record where the issue was raised and ruled upon:**

Before filing a substantive response to the habeas petition, Oklahoma moved to dismiss because Ms. Mars supposedly failed  to exhaust state remedies with respect to her due process and related claims stemming from the OCCA's order reinstating her conviction and sentence.  (Appx.  325-328, 360-362) Petitioner opposed the motion.  (Appx.  893-904)  The magistrate judge to whom the case was delegated for preliminary matters issued a report and recommendation that the state's motion be denied.  (Appx.  905-922)  The state filed objections to the report and recommendation.  (Appx.  923-948)  The district court sustained the state's position, ruling the due process and related arguments had not been exhausted.  (Appx. 949-969)

**C.  Discussion**

Habeas relief cannot be granted to a state prisoner unless all available state court remedies have been exhausted.  28 U.S.C. § 2254(b)(1)(A).  To satisfy the

exhaustion requirement, a habeas petitioner must fulfill "one complete round of the state's established appellate review process." *O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999); *Dever v. Kansas State Penitentiary,* 36 F.3d 1531, 1534 (10th Cir. 1994)(holding that a federal issue has been exhausted if it was properly presented to the highest state court, either on direct appeal or in a post-conviction attack). A fair presentation of federal constitutional claims need not "invoke talismanic language," *Nichols v. Sullivan,* 867 F.2d 1250, 1252 (10th Cir. 1989).  Nor must a petitioner cite "book and verse" of the federal constitution.  A state habeas petitioner must simply raise the substance of the federal constitutional claim in state court.  *Bland v. Sirmons,* 459 F.3d 999, 1011 (10th Cir. 2006).  *See also, Picard v. Connor,* 404 U.S. 270, 278 (1971).

The procedural history of this case was outlined above.  To summarize: In response to the state's motion to vacate the order granting post-conviction relief, Petitioner filed a motion to strike.  The state had long waived its right to appeal or otherwise challenge the state district court's grant of post-conviction relief.  Ms. Mars argued explicitly that granting the state's untimely (and unheard of) motion to vacate would violate not only the Oklahoma constitution and various Oklahoma statutes and rules, but the federal constitution as well:

Any retroactive application of *Wallace* to Ms. Mars is further

16

an *ex post facto* violation and is contrary to Article II, § 15 of
the Oklahoma Constitution and Art. I, § 9 of the U.S. Constitution.
*See Stogner v. California,* 539 U.S. 607, 123 S.Ct. 2446 (2003)
(applying new laws retroactively to someone who has become
safe from pursuit seems "unfair and dishonest").

...

Finally, a retroactive application of *Wallace* in this case violates
Ms. Mars' due process and equal protection rights. Ignoring
numerous statutory and procedural bars by "un-doing" an un-
appealed final order months after Ms. Mars' release from custody
makes a mockery of the Constitution.

(Appx. 122-123)

The federal district court held that regardless of the explicit language in Ms.

Mars's motion to strike the state's motion to vacate, the due process and related

issues were not "fairly presented" to the OCCA; Petitioner could have sought to

respond to the state's petition for extraordinary relief with these arguments, but

did not, thus bypassing an available "remedy." It was noted Ms. Mars received

permission to respond, and did file a response, to the state's earlier prohibition

action in the OCCA respecting the petition for writ of habeas corpus that was

granted in Pottawatomie County. Judge Dishman cited other Oklahoma cases

where responses to petitions for extraordinary relief had been filed, with or

without permission of the OCCA. The court said it could not find an instance

where a request to file a response had been denied. (Appx. 958-965) *See Dutton*

17

*v. Dixon,* 757 P.2d 376, 377 (Okl. Cr. 1988), *overruled by Cartwright v. State,* 778
P.2ds 479 (Okl. Cr. 1989).

The district court cited several capital cases (Ms. Mars's case, of course, is
not a capital case) in further support of its conclusion. *E.g., Fuxton v. State,* No.
PCD-2022-286; *Wood v. State,* No. PCD-2022-550.  It also cited the OCCA court
rule applicable to capital cases.  But this says no more than the rule governing any
extraordinary relief action – that the OCCA *may* order a response.  Rule 9.7(A)(5),
*Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch. 18, App.  (Appx.
958-965)

It was noted also that while the state appended to its prohibition/mandamus
petition the state district court's order denying the motion to vacate, Ms. Mars's
motion to strike was not attached.  (Appx.  958-965)  While the motion to strike
was evidently included in the district court record filed with the OCCA and
alluded to in the state district court's order, the state appellate court need not have
"searched the record" beyond the state's petition itself and the district court's
order denying the motion to vacate. (Appx. 958-965)  *Baldwin v. Reese,* 541 U.S.
27, 32 (2004).  (*Baldwin* does not preclude the appellate court from taking notice
of the lower court record).

For these reasons, Judge Dishman concluded Petitioner's due process, equal

18

protection and *ex post facto* claims were not "fairly presented" to the state appellate court. The arguments were therefore unexhausted and the petition had to be dismissed. (Appx. 964-965)

There was no failure to pursue an available state remedy because neither Ms. Mars nor the respondent judge (Judge Misak) filed (or sought to file) a response to the state's prohibition petition. This is not an "available" avenue, but only a "potentially available" one. The real party in interest (Ms. Mars) did not waive her arguments. She was not the party taking the appeal, and had prevailed in the state district court. The OCCA decided the state's petition on the merits, not due to any "waiver" by Ms. Mars in "failing" to seek permission to file a response. As Judge Dishman acknowledged, the OCCA rules specify that unless a response is ordered *sua sponte*, no response is to be filed. Rule 10.4(A), *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch. 18, App. (Appx. 960-961) As the magistrate judge pointed out, there was nothing to guarantee that had Ms. Mars asked for permission to respond, leave would have been granted. (Appx. 916-921) The permissive nature of this possible "remedy" did not make it "available" as a matter of right.

That Petitioner did not relinquish an "available" state appellate avenue, thus failing to exhaust state remedies, is proved by footnote 1 to Judge Rowland's

dissenting opinion in *State v. Misak,* No. PR-2022-370 (Okl. Cr. April 18, 2023)

(unpublished)(Appx.  204-208):

> Presumably, Clarissa Mars, the defendant in this case, would
> not concede that Judge Misak erred in granting her post-
> conviction relief.  This case, however, is being decided
> *without calling for or permitting a Response from the*
> *Respondent Judge, or Mars as the real party in interest.*

(emphasis added)(Appx. 207)

The record in association with the state's prohibition/mandamus action

consisted of the petition and attachments, including Judge Misak's order denying

the motion to vacate, which reflected the arguments made in Ms. Mars's motion to

strike; the transcript of the March 22, 2022 hearing before Judge Misak on the

state's motion to vacate, where Ms. Mars and her counsel participated and argued

the points contained in the motion to strike; and what is called "record to court."

*State v. Misak,* No. PR-2022-370 (Okl. Cr. April 8, 2023)(unpublished – docket

sheet, available on the Oklahoma Supreme Court Network (OSCN)).  Ms. Mars's

constitutional arguments were "fairly presented" to the OCCA.

Judge Lumpkin's dissenting opinion in *State v. Misak, supra,* demonstrates

conclusively that Ms. Mars's constitutional claims were "fairly presented" to the

OCCA.  Judge Lumpkin mentioned them explicitly in opining the three-judge

majority erred in allowing the state, in a manner not authorized by Oklahoma law,

to prevail on an extraordinary writ when it had neglected altogether to appeal or challenge the state district court's order through the means provided by law:

> I fear that *issues of due process, equal protection and ex post facto prohibitions* will haunt the Court if it persists in crossing the Rubicon with this type of jurisprudence.

(emphasis added)(Appx. 222)

In other remarks, Judge Lumpkin's dissent said the three judge majority showed  no respect for the rule of law.  Its opinion amounted to "the exercise of raw judicial power in cases where the Court has no jurisdiction due to the state's failure to appeal."  Elsewhere in his dissent, Judge Lumpkin raised equal protection concerns based on the majority opinion, and its logic.  (Appx. 212-223)

These passages, as well as the footnote to Judge Rowland's dissent, were not acknowledged in Judge Dishman's order.  And, as Ms. Mars argued in the federal district court, her constitutional arguments were both mentioned and inherent in the manner in which the OCCA treated the state's petition for extraordinary relief.

All this demonstrates Ms. Mars "fairly presented" her federal constitutional claims not only to the state district court, but to the OCCA as well.  In this sense, *Baldwin v. Reese,* 541 U.S. 27. 29, 32 (2004) was satisfied.  Regardless of whether a response was filed to the state's petition, the OCCA did not have to search the

21

record to uncover the federal constitutional claims made here. They were acknowledged in the court's own order, and the majority opinion raises them by its very nature.

The fact the OCCA's order reinstating Ms. Mars's conviction addressed the due process and related issues raised here is enough to show the federal district court's non-exhaustion holding is wrong. Beyond that, the reasoning of the magistrate judge is more persuasive than the district court's.

The magistrate judge pointed out that it was the state itself "that advanced the issue to the OCCA of whether Petitioner's conviction could and should be reinstated." The arguments advanced by the state, and the manner in which the OCCA ruled, framed the federal constitutional issues raised in the habeas petition. There was nothing to attack until the OCCA ruled as it did. And of course, "the OCCA Rules do not permit a response to an extraordinary writ unless the OCCA orders the same. Rule 10.4(A), Rules of the Oklahoma Court of Criminal Appeals." (Appx. 916-921)

While the district court found *Gonzales v. Tafoya,* No. CIV 02-396 WJ/KBM, 2005 WL 8165193 (D.N.M. Feb. 1, 2005)(cited by the magistrate judge, Appx. 50-52) unpersuasive, it is more on point than anything the district court relied upon, especially considering the unique procedural circumstances of

Ms. Mars's case.  In *Gonzales,* New Mexico argued the petitioner did not exhaust his state remedies "because he did not identify his federal claims in his petition for certiorari in the state appellate court." *Id.* at *1.  But, because the New Mexico Supreme Court did not, by its rules or precedent, require the defendant to do so, that argument was dismissed.  The same should be true of Oklahoma's position here.  (Appx. 917-918)

As in *Gonzales,* the OCCA had before it the record containing Ms. Mars' motion to strike, which the appeals court could have accessed and considered.  The substance of the federal claims was presented to the state courts.  *Pendergrast v. Clements,* 699 F.3d 1182, 1184 (10th Cir. 2012).   "Petitioner clearly raised the same arguments to the state court that she raises herein."  (Appx. 917-918)

As the magistrate judge observed, "[i]t can hardly be concluded that a party failed to exhaust state court remedies by not filing a response that is neither permitted nor contemplated under the applicable procedural rules, unless the OCCA directs the party to do so."  (Appx. 916-821)

Ms. Mars exhausted her due process and related arguments.  For this reason, as argued below, a certificate of appealability should be granted on this procedural issue.

It might be said that the due process issue is currently foreclosed by this

Court's ruling in *Graham v. White, supra*.  However, pending Supreme Court review, the last chapter has not been written.  As argued below, even if, at present and based on circuit precedent, the merits of the due process claim would ultimately be rejected, Ms. Mars should still receive encouragement to proceed further.  The underlying due process and related issues have not yet been definitively resolved.

## II.  THE DISTRICT COURT RULED ERRONEOUSLY THAT MS. MARS'S SUBSTANTIVE *McGirt* CLAIM WAS NOT RAISED IN A TIMELY BASIS BECAUSE *McGirt* IS NOT RETROACTIVE.

**A.  Standard of review:**  For example, in determining whether the one-year period of limitation for initiating a federal habeas action has elapsed or been stayed, the district court's decision is reviewed for an abuse of discretion.  *Burger v. Scott,* 317 F.3d 1133, 1138 (10th Cir. 2003).

**B.  Portion of the record where the issue was raised and ruled upon:**  As her second ground for relief, Ms. Mars argued that regardless of anything else, the subject matter jurisdictional rule of *McGirt* is retroactive and is an issue that can never be waived.  (Appx. 17-18)  The district court ruled the period of limitation for raising a substantive *McGirt* claim had long expired, and that *McGirt* did not establish a new jurisdictional rule, but was dictated or foreshadowed by past precedent.   There was thus no impediment to raising the jurisdictional claim

earlier, before *McGirt* was even decided.  (Appx. 965-968)

### C. Discussion

This argument is being raised to preserve the record in case the Supreme Court or some other court of competent authority decides that the jurisdictional rule in *McGirt* is substantive and applies retroactively.

In her habeas petition, Ms. Mars argued that the non-retroactive, "procedural" rule of *State ex rel. Matloff v. Wallace, supra* is illegitimate under federal law.  Otherwise, Oklahoma could convict Native Americans who commit crimes in Indian country as described in the Major Crimes Act.  This usurpation of power raises a federal question.

It seems strange to say that *McGirt* represents a non-retroactive rule of criminal procedure when both McGirt and the defendant in *Sharp v. Murphy, supra,* had their state convictions vacated as a matter of jurisdiction, even though they did not raise their Indian country challenges until the state post-conviction stage.  In *Murphy*, the issue was not raised until the second application for post-conviction relief.

In *McGirt* and *Murphy,* and up until *Wallace*, the question concerned one of subject matter jurisdiction, an issue always open to review on the merits.  This is what the OCCA had always ruled.  This is why, in defending against the

jurisdictional arguments made in *McGirt* and *Murphy*, Oklahoma never argued

waiver or that the jurisdictional question framed one of procedure only.  The law

as it existed at the time was applied correctly in state court to give Ms. Mars post-

conviction relief.  The first iteration of *Bosse v. State, supra*, and the decades-long

line of cases it relied upon, showed as much.  As mentioned, and demonstrating

the tortured nature of the OCCA's decision to reinstate Ms. Mars's conviction,

*Wallace* itself announced a new rule of criminal procedure that should not have

been applied retroactively to upset the grant of post-conviction relief.

The question whether *McGirt* is retroactive has not been decided

definitively by the Supreme Court.  In the majority opinion, Justice Gorsuch said

fears of a tidal wave of *McGirt*-inspired litigation from defendants whose

convictions were long-final were overblown, because waiver principles on post-

conviction review would procedurally bar many of these belated claims.  *McGirt,*

140 S.Ct. at 2479-80 (2020).  In his dissent, Chief Justice Roberts pointed out that

the law in Oklahoma (before *Wallace,* anyway) held that such a challenge was one

of subject matter jurisdiction that could never be forfeited.  *McGirt,* 140 S.Ct. at

2501-02.   As noted, the retroactivity argument was raised in the petition for writ

of certiorari filed by Clifton Parish, the real party in interest in *Wallace*.  *Parish v.*

*Oklahoma, supra*.  Again, the denial of certiorari was not a ruling on the merits.

*Equality Foundation of Greater Cincinnati v. Cincinnati,* 525 U.S. 943

(1998)(Stevens, J., respecting denial of *certiorari*).

The federal district court held that *McGirt* did not announce a new

substantive rule of jurisdiction, but was dictated by existing precedent.  *E.g.,*

*Pacheco v. Habti,* 62 F.4th 1233, 1246 (10th Cir. 2023); 28 U.S.C. §

2244(d)(1)(D).  Because *McGirt* did not break new ground, any such issue had to

be raised within one year of Ms. Mars's conviction becoming final.  Her

conviction became final on December 3, 2015.  The one-year period of limitation

expired on December 6, 2016.  Petitioner's habeas action was not initiated until

July 13, 2023, long after expiration of the period of limitation.  Ms. Mars's state

post-conviction action did not toll the period of limitation, since it was not filed

until October 13, 2020.  *Harris v. Dinwiddie*, 642 F.3d 902, 906 n. 6 (10th Cir.

2011); 18 U.S.C. §§ 2444(d)(1)(A), 2244(d)(2).  (Appx. 965-968)

Because the Supreme Court is so far silent on whether *McGirt's*

jurisdictional rule is procedural only rather than substantive, this is an open issue

for a potential writ of certiorari filed by Ms. Mars, if necessary.

**III.  A CERTIFICATE OF APPEALABILITY SHOULD BE
GRANTED ON MS. MARS'S FEDERAL DUE PROCESS CLAIM AND
HER *McGirt* RETROACTIVITY CLAIM.**

**A.  Standard of Review:**  To proceed on appeal from the denial of a

27

petition filed under 28 U.S.C. § 2254 and/or § 2241, the petitioner must receive a

certificate of appealability. *Montez v. McKenna,* 208 F.3d 862, 867 (10th Cir.

2000). In determining whether a certificate of appealability should issue, a

petitioner "need only demonstrate 'a substantial showing of the denial of a

constitutional right.'" *Miller-El v. Cockrell*, 537 U.S. 322, 326 (2003), *quoting* 28

U.S.C. § 2253( c). "A petitioner satisfies this standard by demonstrating that

jurists of reason could disagree with the district court's resolution of [her]

constitutional claims or that jurists could conclude the issues presented are

adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at

326. As the Supreme Court explained:

> We do not require petitioner to prove, before the issuance of a COA
> that some jurists would grant the petition for habeas corpus. Indeed,
> a claim can be debatable even though every jurist of reason might
> agree after the COA has been granted and the case has received full
> consideration, that petitioner will not prevail.

*Miller-El,* 537 U.S. at 338. *See also, Tennard v. Dretke,* 542 U.S. 274, 281-88

(2004).

On procedural matters such as Ms. Mars's due process, equal protection and

*ex post facto* claims, which the district court determined to be unexhausted, this

Court looks to whether the district court was correct in its procedural ruling. *Slack

v. McDaniel,* 529 U.S. 473, 484 (2000). The same is true of the *McGirt*

retroactivity issue addressed in the second argument.

**B.  Portion of the record where the issues were raised and ruled upon:**

In the federal district court, the State of Oklahoma moved to dismiss the habeas petition in part because Ms. Mars failed to exhaust her due process claim.  (Appx. 325-328, 329-363)   It also argued *McGirt* was not retroactive to cases on collateral review.  (Appx. 325-328, 329-363)  Ms. Mars filed a response to the state's motion to dismiss.  (Appx. 893-904)  The magistrate judge, to whom the case was originally delegated, recommended the motion be denied, ruling in pertinent part that Petitioner had exhausted her state remedies with respect to the due process, equal protection, and *ex post facto* issue(s).  (Appx. 916-921)

The state filed an objection to the report and recommendation.  (Appx. 923-948)  The district judge ruled in the state's favor, holding Petitioner had failed to exhaust her state remedies.  (Appx. 958-965)

The district court ruled also that *McGirt* could not be applied retroactively, in any event.  (Appx. 965-868)

A certificate of appealability was denied.  (Appx. 968)

**C.  Discussion**

The interesting thing about the federal district court's denial of a certificate of appealability on the exhaustion issue is that it never labeled the magistrate

judge's opposite holding "unreasonable." (Appx. 968) The district court simply disagreed with the magistrate judge. (Appx. 958-965) Without concluding the magistrate judge's decision was unreasonable, and because the magistrate judge reached a conclusion diametrically opposed to the district court's, the exhaustion issue is fairly debatable among reasonable jurists. At a minimum, Ms. Mars should receive encouragement to proceed further. *Miller-El v. Cockrell, supra.* As noted, a COA should issue even if it is later concluded, after full consideration, "that petitioner will not prevail." *Miller-El v. Cockrell, supra.*

On the merits of the due process and related issues, this Court has handed down a panel opinion rejecting that argument. *Graham v. White*, *supra*. A petition for rehearing is pending in that case (petition for rehearing *en banc* filed June 4, 2024; state's response field June 17, 2024). Depending on how that is resolved, there could be future action both in this Court and the Supreme Court on the due process issue raised here.

A certificate of appealability should also be granted on the *McGirt* retroactivity issue. Reasonable jurists could disagree whether *McGirt* is a substantive rule of jurisdiction or a mere procedural ruling which does not apply retroactively. This is proved by the fact the OCCA itself did a 180 degree turn

when it looked like *McGirt* relief would be granted to too many defendants.

## CONCLUSION

Based on the foregoing argument and authority, a certificate of appealability on the issues raised should be granted.  The case should be remanded to the district court for further proceedings.

## STATEMENT REGARDING ORAL ARGUMENT

Ms. Mars does not request oral argument.

Respectfully submitted,

/s/ David Autry
David Autry, OBA #11600
1021 N.W. 16th Street
Oklahoma City, OK 73106
(405) 521-9600
(405) 521-9669 [fax]
dbautry77@gmail.com

Lawyer for Petitioner/Appellant,
Clarissa Marie Mars

## CERTIFICATE OF ELECTRONIC SERVICE

This is to certify that on this 8th day of July 2024, a true and correct copy of the foregoing instrument was served electronically via CM/ECF to Jennifer Crabb, Oklahoma Assistant Attorney General, at her official email address.

/s/ David Autry

**CERTIFICATE OF DIGITAL SUBMISSIONS**

I hereby certify that with respect to the foregoing brief:

1.  All privacy redactions have been made;

2.  If required to file additional hard copies, that the ECF submission is an exact copy of those documents;

3.  The ECF submission was scanned for viruses with the most recent version of a commercial virus-scanning program, and is free of viruses.

/s/ David Autry

**CERTIFICATE OF COMPLIANCE**

As required by Fed.R.App. 32(a)(7)( C), I certify that this brief is proportionally spaced and contains 6,769 words.  I relied on my word processor to obtain the count, and it is WordPerfect 8.  I certify that this information is true and correct to the best of my knowledge and belief formed after a reasonable inquiry.

/s/ David Autry

.

32

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

CLARISSA MARIE MARS,               )
                                   )
                Petitioner,        )
                                   )       CIV-23-606-JD
v.                                 )
                                   )
TAMIKA WHITE, Warden,              )
                                   )
                Respondent.        )

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing with counsel, has filed this action seeking relief under 28 U.S.C. § 2254. Before the Court is Respondent's Motion to Dismiss (Doc. No. 9), to which Petitioner has filed a Response. Doc. No. 11. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended Respondent's Motion be denied.

I. Procedural Background

As an initial matter, the Court notes this case presents an unusual procedural background. On November 23, 2015, Petitioner was convicted, following a guilty plea, on one count of Lewd or Indecent Acts to a Child Under Sixteen. Doc. No. 1-1 at 2. The state trial court sentenced Petitioner to ten years imprisonment with all but the first nine months suspended. *Id.* The court also gave Petitioner credit for time

1

served. *Id.* Finally, the state court ordered that Petitioner was subject to multiple special rules and conditions of probation. *Id.* at 3. Petitioner did not move to withdraw her guilty plea or file an appeal.

On August 3, 2016, the State filed an application to revoke Petitioner's suspended sentence. Doc. No. 10-7. On July 25, 2017, the trial court granted the State's application, revoking 5 years of Petitioner's suspended sentence. Doc. Nos. 10-11, 10-13.

On July 9, 2020, the United States Supreme Court issued *McGirt v. Oklahoma*, 591 U.S. __, 140 S.Ct. 2452 (2020). *McGirt* arose from a longstanding rule that "[s]tate courts generally have no jurisdiction to try Indians for conduct committed in 'Indian country.'" *McGirt*, 140 S. Ct. at 2459 (citing *Negonsott v. Samuel*s, 507 U.S. 99, 102-03 (1993)). This is so because the Major Crimes Act "provides that, within 'the Indian country,' '[a]ny Indian who commits' certain enumerated offenses 'against the person or property of another Indian or any other person' 'shall be subject to the same law and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.'" *Id.* (quoting 18 U.S.C. § 1153(a)). "Indian Country" includes "all land within the limits of any Indian reservation under the jurisdiction of the United States Government." 18 U.S.C. § 1151(a). Thus, the relevant question before the Supreme Court was "whether the land . . . treaties promised [the Creek Nation] remain[ed] an

Indian reservation for purposes of federal criminal law." *McGirt*, 140 S.Ct. at 2459. The Court determined that the Creek Nation did remain Indian land, meaning that the State of Oklahoma had not enjoyed jurisdiction over the petitioner's criminal proceedings because, pursuant to the Major Crimes Act, such jurisdiction rested exclusively in the federal court. Based on this determination, the Court reversed the petitioner's conviction.

On July 10, 2020, Petitioner, relying on *McGirt*, filed a petition for writ of habeas corpus in the Pottawatomie County District Court, the county in which she was confined. Doc. Nos. 10-19, 10-20. Therein, Petitioner argued that she was Indian and that she had committed her crime within the boundaries of the Chickasaw Nation, which had not been disestablished. *Id.* On July 22, 2020, the State filed a response arguing that her claim was properly brought in an application for post-conviction relief, Doc. Nos. 10-21, 10-22, to which Petitioner responded. Doc. No. 10-22.

On July 31, 2020, the state trial court held a hearing on Petitioner's petition for writ of habeas corpus and orally denied the State's motion to dismiss. Doc. No. 10-23 at 12-13. The trial court subsequently stayed its ruling in order to allow the State to file a petition for writ of prohibition with the Oklahoma Court of Criminal Appeals ("OCCA"). Doc. No. 10-25. The State subsequently filed such a writ, and Petitioner filed a response. Doc. Nos. 10-26, 10-29. The OCCA granted the State's

petition on September 11, 2020, ruling that Petitioner was required to file an application for post-conviction relief in order to raise a *McGirt* claim. Doc. No. 10-30.

Petitioner filed an application for post-conviction relief on October 13, 2020, in the Garvin County District Court, raising her *McGirt* based claim. Doc. No. 10-31. On December 9, 2020, the State filed a Response to the same. Doc. No. 10-32.

On March 11, 2021, the OCCA issued a decision in *Bosse v. State*, 484 P.3d 286 (Okla. Crim. App. 2021), in which it held that because challenges to subject matter jurisdiction could be raised at any time, a petitioner's conviction that predated *McGirt* could be properly challenged through an application for post-conviction relief. Doc. No. 10-33 at 16-18. The court expressly held that "McGirt provides a previously unavailable legal basis for [the Indian country jurisdiction] claim." *Id.* at 19. The OCCA stayed the issuance of a mandate for the decision for 20 days. *Id.* at 24. On March 31, 2021, the OCCA extended the stay on its issuance of the mandate pending its ruling on the State's motion for reconsideration, filed on the same date. Doc. No. 10-34 at 5. On April 7, 2021, the OCCA denied the State's motion and issued the mandate for the *Bosse* decision. *Id.* at 5-6.

Meanwhile, the state trial court was considering Petitioner's application for post-conviction relief. On March 30, 2021, after the *Bosse* decision but before its mandate, the court, noting the parties' stipulations that Petitioner was Indian and her

4

crime occurred in Indian country, granted Petitioner's application and ordered her released. Doc. No. 10-35 at 1. On the same date, the Oklahoma Department of Corrections released Petitioner from custody. Doc. No. 10-36. The State did not appeal or otherwise challenge the trial court's ruling.

On April 9, 2021, the OCCA recalled the mandate in *Bosse* and on April 15, 2021, stayed issuance of the same for 45 days. *Bosse v. State*, 499 P.3d 771, 774 (Okla. Crim. App. 2021). On August 12, 2021, the OCCA issued its decision in *State ex. rel. Matloff v. Wallace*, 497 P.3d 686 (Okla. Crim. App. 2021), in which it decreed "that *McGirt v. Oklahoma* announced a new rule of criminal procedure which we decline to apply retroactively in a state post-conviction proceeding to void a final conviction." *Id.* at 688. "[W]e now hold that *McGirt* and our post-*McGirt* decisions recognizing [] reservations shall not apply retroactively to void a conviction that was final when *McGirt* was decided. Any statements, holdings, or suggestions to the contrary in our previous cases are hereby overruled." *Id.* at 689. On August 31, 2021, the OCCA, relying on *Wallace*, vacated its decision in *Bosse* and withdrew the previously published decision. *Bosse*, 499 P.3d at 775.

On August 24, 2021, almost five months after the trial court granted Plaintiff's post-conviction relief and ordered her release, the State filed a motion to vacate order granting post-conviction relief in Petitioner's criminal case. Doc. No. 10-37. The State argued the trial court's order granting Petitioner post-conviction was

unauthorized in light of *Wallace. Id.* On December 15, 2021, Petitioner moved to strike the State's motion as untimely, arguing, *inter alia*, that the district court had no jurisdiction to hear the motion because the State's time to appeal from the grant of post-conviction relief had lapsed. Doc. No. 10-38. She also asserted, "[A] retroactive application of *Wallace* in this case violates Ms. Mars' due process and equal protection rights. Ignoring numerous statutory and procedural bars by 'un-doing' and un-appealed final order months after Ms. Mars' release from custody makes a mockery of the Constitution." Doc. No. 10-38 at 6.

On March 31, 2022, the state trial court denied the State's motion to vacate. In so denying, the court noted that following the ruling granting Petitioner's post-conviction application, the State did not appeal or otherwise preserve a means to challenge the same.

> Unlike the attorneys representing the State of Oklahoma in *Matloff*, the prosecuting attorneys did not request a stay at the hearing, did not file a verified request for stay with [the] OCCA, did not petition for a writ of prohibition as contemplated by Rule 10.1 of the Rules of the Court of Criminal Appeals, and did not appeal this court's order pursuant to Section V of the Rules of the Court of Criminal Appeals. That lack of action led to this court's order becoming final, and none of the authorities cited by the State of Oklahoma persuade this Court that [it] has the authority to vacate its order entered on March 30, 2021.

Doc. No. 10-40 at 7.

On April 21, 2022, the State filed a petition for writ of prohibition or, in the alternative, petition for writ of mandamus with the OCCA. Doc. No. 10-41. The

State argued that the OCCA is the proper authority to provide the adequate remedies to correct the erroneous vacatur of Petitioner's conviction in light of the extraordinary change in the law. *Id.* at 14.

On April 18, 2023, the OCCA issued a ruling granting the State's request for a writ of mandamus. Doc. No. 10-47. Based on an argument never raised by the State, the OCCA found that the trial court's ruling was unauthorized because it relied on *Bosse*, and the OCCA had not issued the mandate at the time of the trial court's ruling. *Id.* at 3-4. The OCCA ordered the state district court to vacate its March 2021 order granting Petitioner post-conviction relief and reinstate her judgment and sentence. *Id.* at 6. The trial court did so on April 20, 2023. Doc. No. 10-48. Petitioner was reincarcerated on May 18, 2023. Doc. No. 10 at 21.

On July 13, 2023, Petitioner filed the instant action seeking habeas relief against the trial court's April 20, 2023 order reinstating her conviction and sentence. Doc. No. 1. She challenges the state courts' retroactive application of *Wallace* against her following her release and asserts that the OCCA/trial court's orders violate her rights to due process and equal protection.

On August 15, 2023, Respondent filed a Motion to Dismiss, relying on Petitioner's initial conviction date and arguing this action is untimely. Doc. No. 9. Respondent also contends Petitioner failed to exhaust her state court remedies prior to seeking habeas corpus relief.

II. <u>Statute of Limitations</u>

The Antiterrorism and Effective Death Penalty Act ("AEDPA") establishes a one-year limitations period for claims of a habeas petitioner in state custody. *Rhine v. Boone*, 182 F.3d 1153, 1154 (10th Cir. 1999). The one-year limitations period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D). Unless a petitioner alleges facts implicating subsection (B), (C), or (D), the limitations period generally begins to run from the date on which the conviction becomes final. *Preston v. Gibson*, 234 F.3d 1118, 1120 (10th Cir. 2000).

The state court entered Petitioner's original sentence on November 23, 2015, following a guilty plea. *See, supra.* Petitioner did not move to withdraw her guilty

plea nor file a direct appeal. Presuming, without deciding, that § 2244(d)(1)(A)

applies to the current Petition, Petitioner's conviction became "final" under 28

U.S.C. § 2244(d)(1)(A) on December 3, 2015, when the ten-day time period for

Petitioner to file an application to withdraw her guilty plea expired. Rule 4.2(A),

Rules of the Oklahoma Court of Criminal Appeals, Okla. Stat. tit. 18, Ch. 18, App.;

*Fisher v. Gibson*, 262 F.3d 1135, 1142 (10th Cir. 2001) (noting the petitioner's

Oklahoma convictions became "final ten days after entry of Judgment and

Sentence.").

Accordingly, Petitioner had one year beginning on December 4, 2015, to file

her federal habeas petition commensurate with 28 U.S.C. § 2244(d)(1)(A). Absent

statutory or equitable tolling, her one-year filing period expired on Monday,

December 5, 2016. Respondent argues that because Petitioner did not file this action

until July 13, 2023, it should be dismissed as untimely.

It is not necessary to consider statutory tolling or whether a separate starting

date applies under § 2244(d)(1)(B)-(D) because the record establishes Petitioner is

entitled to equitable tolling of the statute of limitations. 28 U.S.C. "§ 2244(d) is not

jurisdictional and as a limitation may be subject to equitable tolling." *Miller v. Marr*,

141 F.3d 976, 978 (10th Cir. 1998). The Tenth Circuit limits equitable tolling of the

one-year limitation period to "'rare and exceptional' circumstances." *Burger v.*

*Scott*, 317 F.3d 1133, 1141 (10th Cir. 2003) (citing *Gibson v. Klinger*, 232 F.3d 799,

808 (10th Cir. 2000)). "Equitable tolling is appropriate, for example, when a prisoner is actually innocent, when an adversary's conduct-or other uncontrollable circumstances-prevents a prisoner from timely filing, or when a prisoner actively pursues judicial remedies but files a defective pleading during the statutory period." *Burger*, 317 F.3d at 1141 (citing *Gibson*, 232 F.3d at 808). Regardless, equitable tolling is "only available when an inmate diligently pursues his claims and demonstrates that the failure to timely file was caused by extraordinary circumstances beyond his control." *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000). *See also Clark v. Oklahoma*, 468 F.3d 711, 714 (10th Cir. 2006) (equitable tolling does not apply unless a petitioner shows both extraordinary circumstances preventing timeliness and diligent pursuit of his claim). The burden is on a petitioner to demonstrate the circumstances that justify equitable tolling. *Miller*, 141 F.3d at 977.[1]

Here, Petitioner has established that extraordinary circumstances prevented

---

[1] Respondent does not address equitable tolling in her Motion to Dismiss other than to state that Petitioner did not formally raise the same in relation to the timeliness of her Petition. However, in her Petition and Brief in Support of the same, Petitioner set out the procedural history of this matter in detail and specifically noted that "there was no need for [Petitioner] to initiate a federal habeas proceeding until the OCCA reversed the state district court, which had granted post-conviction relief, and ordered her conviction and sentence reinstated in defiance of applicable Oklahoma law and procedure." Doc. No. 6 at 6. Further, in her Response to the Motion to Dismiss, Petitioner sets forth a specific argument regarding why equitable tolling should apply to her Petition. Doc. No. 11 at 6-12. Respondent did not choose to file a Reply to Petitioner's Response.

her from filing a timely petition. As both parties repeatedly acknowledge, the circumstances from which the Petition arises are unusual, to say the least, prompting the OCCA to grant the State extraordinary relief. Doc. No. 10-47. The sequence of events and various state actions underlying her request for habeas corpus relief did not begin until July 9, 2020, when the Supreme Court issued the *McGirt* decision. This date was well after December 5, 2016, when Petitioner's initial deadline to file a Petition for a Writ of Habeas Corpus expired. Moreover, a state court did not enter a ruling indicating that it would vacate a previous order authorizing Petitioner's release until April 18, 2023. Until that date, Petitioner had no basis to seek habeas corpus relief. Accordingly, the undersigned concludes Petitioner has met her burden of establishing that extraordinary circumstances prevented her from timely filing the Petition.

Additionally, as illustrated above, Petitioner diligently pursued her rights throughout the various proceedings arising from *McGirt* and the subsequent cases related thereto. While the application of equitable tolling is rare, there is little question this case presents unusual circumstances that warrant the same. It is nonsensical to hold Petitioner to a one-year deadline from her initial conviction date when the events underlying her request for habeas relief did not happen for several years thereafter. Considering the unique facts of this case, this is one of the "rare and exceptional" circumstances in which equitable tolling is appropriate. *Yang v.*

11

*Archuleta*, 525 F.3d 925, 929 (10th Cir. 2008) ("Equitable tolling is a rare remedy to be applied in unusual circumstances.").

## III. Exhaustion

Respondent also argues Petitioner failed to exhaust her remedies in state court prior to bringing this habeas action. Doc. No. 10 at 32-34. "A threshold question that must be addressed in every habeas case is that of exhaustion." *Harris v. Champion*, 15 F.3d 1538, 1554 (10th Cir. 1994). "Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). "Exhaustion requires that the claim be 'fairly presented' to the state court, which 'means that the petitioner has raised the 'substance' of the federal claim in state court.'" *Fairchild v. Workman*, 579 F.3d 1134, 1151 (10th Cir. 2009) (quoting *Bland v. Sirmons*, 459 F.3d 999, 1011 (10th Cir. 1999). This means "a federal habeas petitioner [must] provide the state courts with a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (citation omitted).

Relying on *Baldwin v. Reese*, 541 U.S. 27 (2004), Respondent contends Petitioner failed to exhaust her state remedies because she has not presented her

current arguments to the OCCA. In *Baldwin*, the Supreme Court stated:

> To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. *Duncan, supra*, at 365-366 []; *O'Sullivan*[, 526 U.S. at 845].

*Id.* at 29. The Court further explained that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Id.* at 32.

In asserting this argument, Respondent concedes it was the State's petition for writ of mandamus that advanced the issue to the OCCA of whether Petitioner's conviction could and should be reinstated. Nevertheless, Respondent contends Petitioner failed to exhaust her state court remedies because she did not file a response to the State's petition. As such, Petitioner never presented her federal claims to the state's highest court. Based on this, Respondent argues Petitioner failed to exhaust her state court remedies prior to filing this action. Notably, however, the OCCA Rules do not permit a response to an extraordinary writ unless the OCCA orders the same. Rule 10.4(A), Rules of the Oklahoma Court of Criminal Appeals.

While not directly on point, a similar situation arose before the court in *Gonzales v. Tafoya*, No. CIV 02-396 WJ/KBM, 2005 WL 8165193 (D.N.M. Feb. 1,

2005). Therein, the respondent argued that the petitioner failed to exhaust state court remedies because he did not identify his federal claims in his petition for certiorari to the state appellate court. *Id.* at *1. The court rejected this argument, however, based on the fact that the New Mexico Supreme Court Rules did not require the petitioner to do so. *Id.* The court explained the New Mexico Supreme Court requirements:

> A petition for certiorari from a denial of a state habeas petition "shall:" (1) not exceed ten pages; (2) attach a copy of the petition for writ of habeas corpus and any attachments and the response that were filed in district court; (3) attach a copy of the district court's decision denying the habeas petition; (4) contain a description of the district court proceedings to demonstrate whether an evidentiary hearing was held and, if so, a summary of the evidence presented at the hearing; (5) contain a "direct and concise argument showing that the district court's decision was erroneous;" and (6) contain a prayer for relief.

*Id.* (quoting New Mexico Rule 12-501(C)).

The federal district court explained that in *Baldwin*, the Court specifically rejected a ruling that would *require* the appellate court to read the lower court opinion or record, but did not prohibit it. *Id.* at 2.

> The Supreme Court noted that appellate judges "often read lower court opinions, but they do not necessarily do so in every case." *Id.* at 1350-51. The Supreme Court expressly rejected a rule that could "force state appellate judges to alter their ordinary review practices" and thereby impose "a serious burden upon judges of state appellate courts." *Id.* It is of note, however, that the New Mexico appellate rule at issue here expressly contemplates that the Justices will consider documents beyond the petition in making their decision. *See* New Mexico Rule 12-501(C).

*Id.*

Similarly, as noted in the present case, the OCCA Rules specifically provide that a party may only file a response to a petition for writ of mandamus if the OCCA orders the party to do so. Rule 10.4(A), Rules of the Oklahoma Court of Criminal Appeals. Here, the OCCA did not direct Petitioner to file a response. Thus, as in *Gonzales*, the OCCA Rules specifically contemplate that the Justices may consider the lower court opinion and/or record in making its decision. Additionally, although the OCCA Rules do not address a party's ability to request leave of court to file a response, both parties and the underlying record herein indicate a party may do so. However, there is no guarantee the OCCA would have granted such leave. Regardless, it can hardly be concluded that a party failed to exhaust state court remedies by not filing a response that is neither permitted nor contemplated under the applicable procedural rules, unless the OCCA directs the party to do so.

The OCCA Rules further provide that once it has "rendered its decision on an extraordinary writ, that decision shall constitute a final order. A petition for rehearing is not allowed." Rule. 10.6(D), Rules of the Oklahoma Court of Criminal Appeals. Thus, it appears Petitioner did not have an avenue to request reconsideration of the OCCA's order or file an appeal.[2]

---

[2] Respondent does not indicate in her Motion to Dismiss that, following the OCCA's order granting extraordinary relief, Petitioner failed to utilize an available remedy.

Finally, in her Response, Petitioner suggests Respondent also challenges whether she presented her current claims to the state courts. Doc. No. 11 at 3-4. The Court finds Respondent's exhaustion challenge was clearly limited to Petitioner's lack of response before the OCCA. Doc. No. 10 at 32-34. Nevertheless, to the extent Respondent implies that Petitioner failed present her current arguments at the state court level, the Court disagrees.

As previously discussed, in determining whether a claim has been fairly presented to the state courts, "the crucial inquiry is whether the 'substance' of the petitioner's claim has been presented to the state courts in a manner sufficient to put the courts on notice of the federal constitutional claim." *Prendergast v. Clements*, 699 F.3d 1182, 1184 (10th Cir. 2012) (citation omitted). In her motion to strike the State's untimely motion to vacate order granting post-conviction relief, Petitioner specifically argued:

> Any retroactive application of *Wallace* to [Petitioner] is [] an *ex post facto* violation and is contrary to Article II, § 15 of the Oklahoma Constitution and Art. 1, § 9 of the U.S. Constitution. *See, Stogner v. California*, 539 U.S. 607 [] (2003) (applying new laws retroactively to someone who has become free from pursuit seems "unfair and dishonest").

Doc. No.10-38 at 5. She further argued:

> Additionally, unlike in *Wallace*, the State here did not promptly petition the Court of Criminal Appeals for extraordinary relief, seek a stay of proceedings, or even file a basic appeal. *Wallace*, 2021 OK CR 21, ¶40.

16

> [A] retroactive application of *Wallace* in this case violates [Petitioner's] due process and equal protection rights. Ignoring numerous statutory and procedural bars by "un-doing" an un-appealed final order months after [Petitioner's] release from custody makes a mockery of the Constitution.

*Id.* at 5-6. Thus, Petitioner clearly raised the same arguments to the state court that she raises herein. Accordingly, Respondent's Motion to Dismiss based on lack of exhaustion should be denied.

## RECOMMENDATION

Based on the foregoing findings, it is recommended that Respondent's Motion to Dismiss (Doc. No. 9) be denied and Respondent be directed to file a Response to the merits of the Petition for a Writ of Habeas Corpus. Respondent is advised of her right to file an objection to this Report and Recommendation with the Clerk of this Court by November 14th, 2023. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. *Moore v. United States of America*, 950 F.2d 656 (10th Cir. 1991); *see, cf., Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation does not dispose of all issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this 25th day of October, 2023.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE

No. CIV-23-606-JD

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

---

**CLARISSA MARIE MARS,**

**Petitioner,**

**–vs–**

**TAMIKA WHITE, Warden,**

**Respondent.**

---

**RESPONDENT'S OBJECTION TO REPORT AND RECOMMENDATION**

---

**GENTNER F. DRUMMOND**
**ATTORNEY GENERAL OF OKLAHOMA**

**JENNIFER L. CRABB, OBA #20546**
**ASSISTANT ATTORNEY GENERAL**

**313 NE 21st Street**
**Oklahoma City, OK    73105**
**(405) 521-3921; (405) 522-4534 (FAX)**
**Service email:    fhc.docket@oag.ok.gov**

**ATTORNEYS FOR RESPONDENT**

---

**November 8, 2023**

## <u>TABLE OF CONTENTS</u>

Page

**A.**   **Petitioner is not Entitled to Equitable Tolling** ........................................... **1**

　　*1.*　*Petitioner did not Request Equitable Tolling* ................................. **3**

　　*2.*　*Nothing **Prevented** Petitioner from Raising a Claim Based on Her Indian Status within the Statutory Year* ................................ **10**

　　*3.*　*Petitioner has not Been Diligent* ........................................... **14**

**B.**   **Petitioner did not Exhaust State Remedies** ....................................... **15**

**CONCLUSION** ......................................................................................... **19**

**CERTIFICATE OF SERVICE** ................................................................. **19**

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Anderson v. Harless,*
    459 U.S. 4 (1982) ........................................................................... 18

*Hooks v. Crow,*
    No. CIV-21-00592-PRW, 2022 WL 446825 (W.D. Okla. Feb. 14, 2022) ................... 9

*Baldwin v. Reese,*
    541 U.S. 27 (2004) ......................................................................... 15

*Barnett v. Oklahoma,*
    No. CIV-20-757-JD, 2020 WL 8768537 (W.D. Okla. Sept. 18, 2020) ..................... 12

*Byrd v. Workman,*
    645 F.3d 1159 (10th Cir. 2011) ............................................................ 17

*Caldwell v. Dowling,*
    No. CIV-22-340-JD, 2022 WL 4287937 (W.D. Okla. June 23, 2022) ..................... 13

*Camelin v. Warden, Se. Corr. Inst.,*
    No. 2:21-CV-4070, 2022 WL 683454 (S.D. Ohio Mar. 8, 2022) ......................... 9

*Day v. McDonough,*
    547 U.S. 198 (2006) ......................................................................... 3

*E.J.R.E. v. United States,*
    453 F.3d 1094 (8th Cir. 2006) .......................................................... 11, 15

*Fleming v. Evans,*
    481 F.3d 1249 (10th Cir. 2007) ............................................................ 11

*Gibson v. Klinger,*
    232 F.3d 799 (10th Cir. 2000) ............................................................. 12

*Gonzales v. Tafoya,*
    No. CIV 02-396 WJ/KBM, 2005 WL 8165193 (D.N.M. Feb. 1, 2005) ................... 16

*Grant v. Royal,*
    886 F.3d 874 (10th Cir. 2018) ............................................................. 18

*Grant v. Trammell*,
　727 F.3d 1006 (10th Cir. 2013) ........................................................................ 9

*Gray v. Netherland*,
　518 U.S. 152 (1996) .......................................................................................... 18

*Greene v. Nunn*,
　606 F.Supp.3d 1108 (N.D. Okla. 2022) ........................................................... 12

*Hall v. Bellmon*,
　935 F.2d 1106 (10th Cir. 1991) ......................................................................... 7

*Head v. Wilson*,
　792 F.3d 102 (D.C. Cir. 2015) .......................................................................... 11

*Jackson v. Duckworth*,
　112 F.3d 878 (7th Cir. 1997) ............................................................................. 8

*Jalowiec v. Bradshaw*,
　657 F.3d 293 (6th Cir. 2011) ............................................................................. 8

*Jones v. Pettigrew*,
　No. CIV-18-633-G, 2021 WL 3854755 (W.D. Okla. Aug. 27, 2021) ............ 14

*Landgraf v. USI Film Products*,
　511 U.S. 244 (1994) .......................................................................................... 18

*Lo v. Endicott*,
　506 F.3d 572 (7th Cir. 2007) .................................................................... 11, 14

*Loya v. Whitten*,
　No. CIV-20-922-C, 2021 WL 3477710 n.7 (W.D. Okla. June 7, 2021) .......... 8

*Marsh v. Soares*,
　223 F.3d 1217 (10th Cir. 2000) ....................................................................... 11

*McDade v. Pettigrew*,
　No. CIV-22-845-JD, 2022 WL 17350926 (W.D. Okla. Oct. 24, 2022)........... 13

*McGirt v. Oklahoma*,
　140 S. Ct. 2452 (2020)............................................................................... Passim

*McMullin v. Bravo*,
   530 F. App'x 693 (10th Cir. 2013) ................................................................ 8

*Meek v. Martin*,
   74 F.4th 1223 (10th Cir. 2023) ................................................................... 7

*Mitchell v. Nunn*,
   601 F.Supp.3d 1076 (N.D. Okla. 2022) ................................................. 12, 15

*Murphy v. Royal*,
   875 F.3d 896 (10th Cir. 2017) ................................................................... 12

*O'Sullivan v. Boerckel*,
   526 U.S. 838 (1999) ................................................................................... 17

*Pace v. DiGuglielmo*,
   544 U.S. 408 (2005) ..................................................................................... 3

*Pacheco v. El-Habti*,
   62 F.4th 1233 (10th Cir. 2023) ................................................................... 4

*Pinson v. Berkebile*,
   528 F. App'x 822 (10th Cir. 2013) .............................................................. 8

*Pitts v. Nunn*,
   No. CIV-22-25-JD, 2022 WL 17834357 (W.D. Okla. Feb. 22, 2022) ................... 6, 11

*Pitts v. Nunn*,
   No. CIV-22-25-JD, 2022 WL 17361487 (W.D. Okla. Dec. 1, 2022) ............... 6, 13, 15

*Rackley v. Whitten*,
   No. CIV-22-394-JD, 2022 WL 16942249 (W.D. Okla. Aug. 12, 2022) .................... 13

*Reedy v. Werholtz*,
   660 F.3d 1270 (10th Cir. 2011) ................................................................ 4, 5

*San Martin v. McNeil*,
   633 F.3d 1257 (11th Cir. 2011) ................................................................... 9

*Sanders v. Pettigrew*,
   No. CIV-20-350-RAW-KEW, 2021 WL 3291792 (E.D. Okla. Aug. 2, 2021) .......... 12

*Shannon v. Newland*,
    410 F.3d 1083 (9th Cir. 2005) ........................................................................ 11, 12

*Smiley v. Crow*,
    No. CIV-22-0017-HE, 2022 WL 3326038 (W.D. Okla. Aug. 11, 2022) .................... 13

*Stogner v. California*,
    539 U.S. 607 (2003) ............................................................................................. 18

*Thomas v. Guffy*,
    No. CIV-07-823-W, 2008 WL 2884368 (W.D. Okla. July 25, 2008) ......................... 9

*Thompkins v. McKune*,
    433 F. App'x 652 (10th Cir. 2011) ......................................................................... 8

*Tyler v. Mitchell*,
    416 F.3d 500 (6th Cir. 2005) ................................................................................ 8

*United States v. Budder*,
    76 F.4th 1007 (10th Cir. 2023) ............................................................................ 18

*United States v. Harris*,
    No. CR-08-94-M, 2013 WL 12069034 (W.D. Okla. Mar. 14, 2013) ......................... 9

*Whiteside v. United States*,
    775 F.3d 180 (4th Cir. 2014) ......................................................................... 11, 14

*Williamson v. Nunn*,
    No. CIV-22-395-JD, 2022 WL 18397133 (W.D. Okla. June 28, 2022) .................... 12

*Williamson v. Nunn*,
    No. CIV-22-395-JD, 2022 WL 17986821 (W.D. Okla. Dec. 29, 2022) ............... 12, 15

*Yang v. Archuleta*,
    525 F.3d 925 (10th Cir. 2008) ............................................................................. 11

# STATE CASES

*Dutton v. Dixon*,
  757 P.2d 376 (Okla. Crim. App. 1988) ........................................................ 16

*State ex rel. Matloff v. Wallace*,
  497 P.3d 686 (Okla. Crim. App. 2021) ..................................................... 2, 7

*State v. Martin*,
  959 P.2d 982 (Okla. Crim. App. 1998) ....................................................... 16

# STATUTES

18 U.S.C. § 1151 ........................................................................................... 2

18 U.S.C. § 1152 ........................................................................................ 1, 2

18 U.S.C. § 1153 ........................................................................................ 1, 2

28 U.S.C. § 2241 ........................................................................................... 1

28 U.S.C. § 2244 ........................................................................................... 4

28 U.S.C. § 2254 ........................................................................................ 1, 3

# RULES

Rule 9.7, *Rules of the Oklahoma Court of Criminal Appeals,*
  Okla. Stat. tit. 22, Ch. 18, App ................................................................. 17

Rule 10.4, *Rules of the Oklahoma Court of Criminal Appeals,*
  Okla. Stat. tit. 22, Ch. 18, App .............................................................. 15, 16

## IN THE UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **CLARISSA MARIE MARS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-23-606-JD** |
| | ) | |
| **TAMIKA WHITE, Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## <u>RESPONDENT'S OBJECTION TO REPORT AND RECOMMENDATION</u>

Petitioner was convicted on November 23, 2015, of one count of lewd acts with a child under the age of 16.  Petitioner's conviction became final on December 3, 2015, after she failed to attempt to withdraw her guilty plea.  More than seven years later, Petitioner filed in this Court a petition for writ of habeas corpus pursuant to 28 U.S.C. §§ 2241 and 2254 asking this Court to "find that the state of Oklahoma had no jurisdiction to charge, convict and sentence [her], and that jurisdiction lay exclusively with the federal courts under the Major Crimes Act [18 U.S.C. § 1153]." Doc. 1 at 15.[1]  Respondent filed a motion to dismiss the petition as untimely and, alternatively, as containing only unexhausted grounds for relief.  Doc. 10.

On October 25, 2023, United States Magistrate Judge Gary M. Purcell recommended denial of Respondent's motion to dismiss.  Doc. 12.  Judge Purcell recommended equitable tolling of the statute of limitations and found Petitioner's

---

[1] References to page numbers are to the documents' original pagination.

arguments in the state district court were sufficient to exhaust her claims.  Respectfully, the Report and Recommendation is in error and should be rejected.

## A.   Petitioner is not Entitled to Equitable Tolling.

The procedural history of Petitioner's case is thoroughly described in Respondent's Brief in Support of Motion to Dismiss.  Doc. 10 at 2-13.  For clarity, Respondent provides a succinct summary here.  Petitioner's conviction became final in 2015.  She did not attempt to withdraw her guilty plea or in any way challenge her conviction until she filed a procedurally defective state petition for writ of habeas corpus in 2020, in which she relied upon *McGirt v. Oklahoma*, 140 S. Ct. 2452 (2020), to allege her conviction should be vacated because she is Indian and she committed the crime in Indian country.  *See* 18 U.S.C. §§ 1151-53.  After wasting three months on her improper state habeas petition, Petitioner filed an application for post-conviction relief raising the same claim.

On March 30, 2021, the Garvin County District Court granted post-conviction relief. The State did not appeal.  On August 12, 2021, the Oklahoma Court of Criminal Appeals ("OCCA") held in another case that, as a matter of state law, *McGirt* does not apply retroactively.  *See State ex rel. Matloff v. Wallace*, 497 P.3d 686 (Okla. Crim. App. 2021). Thereafter, the State filed in state district court a motion to vacate the order granting post-conviction relief which Petitioner opposed via a motion to strike the State's motion.  The district court denied the State's motion.

The State then filed a petition for writ of prohibition in the OCCA, serving a copy on Petitioner's counsel.  Although the petition was pending for almost exactly one year, Petitioner never attempted to respond or in any way oppose the State's petition.  On April

18, 2023, the OCCA granted the State's writ, directing the state district court to vacate its order granting post-conviction relief.   Three months later, Petitioner filed the instant Petition in this Court.

As outlined in Respondent's Brief in Support of Motion to Dismiss, the statute of limitations expired on December 5, 2016, and Petitioner did not request equitable tolling. Doc. 10 at 20-23.   Nonetheless, the Report and Recommendation concluded that "the record establishes Petitioner is entitled to equitable tolling" because *McGirt* was not decided until 2020 and the OCCA vacated the state district court's grant of post-conviction relief on April 18, 2023.  Doc. 12 at 9-11.  Respectfully, the Report and Recommendation is incorrect for three reasons: (1) Petitioner did not request equitable tolling; (2) Petitioner was not prevented from timely filing a habeas petition seeking the very relief she requests here; and (3) Petitioner was not diligent.

### 1.  *Petitioner did not Request Equitable Tolling*

A habeas petitioner bears the burden of establishing her entitlement to equitable tolling.  *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).  Thus, Petitioner was required to "establish[] two elements: (1) that [s]he has been pursuing h[er] rights diligently, and (2) that some extraordinary circumstance stood in h[er] way."  *Id*.  Although the statute of limitations has been described as an "affirmative defense", *see Day v. McDonough*, 547 U.S. 198, 199 (2006), even *pro se* habeas petitioners "*must* explain why the one-year statute of limitations as contained in 28 U.S.C. § 2254(d) does not bar [their] petition."  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2254 at 14, located at https://www.okwd.uscourts.gov/forms/, last visited Nov. 1, 2023 (emphasis added).

Petitioner is not *pro se* and, therefore, is not entitled to a liberal construction of her pleadings. *Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011). In her Brief in Support, Petitioner, through counsel, included an argument regarding timeliness in which her primary contention was that her case is indistinguishable from *Graham v. White*, No. 23-CV-164-CVE-SH (N.D. Okla. June 22, 2023). Doc. 6 at 5-6. However, as pointed out in the Brief in Support of Motion to Dismiss, Graham's petition was timely under 28 U.S.C. § 2244(d)(1)(A) because she received the benefit of statutory tolling pursuant to 28 U.S.C. § 2244(d)(2). Doc. at 10 at 15. Unlike Graham, Petitioner did not file any post-conviction proceedings during the statutory year.

Petitioner then discussed, "[b]y analogy", 28 U.S.C. § 2244(d)(1)(B), which permits the filing of a habeas petition within one year of the date a state-created impediment is removed. Doc. 6 at 6. Similarly, Petitioner "analogously" cited 28 U.S.C. § 2244(d)(1)(C) which provides a new starting date when the Supreme Court declares a new rule of constitutional law that is retroactive. Doc. 6 at 6-7.[2]

Finally, Petitioner noted that the petitioner in *McGirt* obtained relief on collateral review. Doc. 6 at 7-8. The exact import of this section as to the timeliness of the petition, which concludes that "*McGirt* does apply retroactively to Ms. Mars's case", is unclear. Doc. 6 at 8. If Petitioner is relying upon § 2244(d)(1)(C), this argument fails based on *Pacheco*.

---

[2] Petitioner failed to recognize that the Tenth Circuit has held that "*McGirt* announced no new constitutional right." *Pacheco v. El-Habti*, 62 F.4th 1233, 1246 (10th Cir. 2023).

Not once did Petitioner, through counsel, use the words "equitable tolling."  Doc. 6 at 5-8.  While a *pro se* petitioner's failure to invoke the doctrine by name should be excused so long as she sufficiently argues for equitable tolling, the same is not true of counseled briefs.  *See Reedy*, 660 F.3d at 1274 ("If Plaintiffs were pro se, we would construe their pleadings liberally. . . .  But they are represented by counsel, and we expect attorneys appearing before this court to state the issues on appeal *expressly and clearly, with theories adequately identified and supported with proper argument*.") (Emphasis added and internal citation omitted).  However, even assuming Petitioner's failure to explicitly ask for equitable tolling could be excused, Petitioner made no attempt to argue that she was *prevented* from timely filing her habeas petition or that she had been diligent.

The Report and Recommendation addressed the matter of equitable tolling for two reasons.  *First*, "in her Petition and Brief in Support of the same, Petitioner set out the procedural history of this matter in detail and specifically noted that 'there was no need for [petitioner] to initiate a federal habeas proceeding until the OCCA reversed the state district court . . . .' Doc. No. 6 at 6." Doc. 12 at 10 n.1.  Before addressing the adequacy of this argument to invoke equitable tolling on behalf of a counseled petitioner, Respondent must point out that this particular finding is illustrative of a very significant matter that the Report and Recommendation overlooked.

Petitioner's grounds for relief are: (1) that the OCCA's order directing the state district court to vacate its grant of post-conviction relief violated due process and (2) the Supreme Court's holding in *McGirt* must apply retroactively to final convictions.  The State maintains that Petitioner's grounds for relief present incognizable challenges to the

state's post-conviction procedures.  *See* Doc. 10 at 17-19, 24.  However, the Report and Recommendation overlooks Petitioner's specific request for relief, which shows that she believes the federal government has exclusive jurisdiction over her crime.  Petitioner argues that her "conviction and sentence should be vacated" because "jurisdiction lay exclusively with the federal courts under the Major Crimes Act."  Doc. 1 at 15.

It is for this reason that the Report and Recommendation's findings that Petitioner had "no need" to initiate a habeas proceeding within the statutory year, Doc. 12 at 10 n.1, and that until the OCCA's grant of an extraordinary writ "Petitioner had no basis to seek habeas corpus relief" are deeply flawed.  As discussed in detail below, this Court has repeatedly held that nothing prevented Oklahoma inmates from seeking relief under the Major Crimes Act before *McGirt* was decided.  *See, e.g.*, *Pitts v. Nunn*, No. CIV-22-25-JD, 2022 WL 17834357, at *2-5 (W.D. Okla. Feb. 22, 2022) (unpublished), *report and recommendation adopted,* No. CIV-22-00025-JD, 2022 WL 17361487 (W.D. Okla. Dec. 1, 2022) (refusing to apply equitable tolling to a *McGirt* claim because "a jurisdictional claim under *McGirt* arises from ignorance of the law as it already existed prior to the decision").  Petitioner has always had a basis for seeking habeas relief from her conviction on her argument that "jurisdiction lay exclusively with the federal courts under the Major Crimes Act."  Doc. 1 at 15.  Nothing *prevented* Petitioner from timely filing a habeas petition seeking relief—as she does here (although in an improper manner by challenging state post-conviction procedure)—based on her Indian status.

In any event, returning to the Report and Recommendation's apparent conclusion that Petitioner adequately requested equitable tolling, her extremely vague reference,

6

*through counsel*, to whether she "need[ed]" to file a petition says nothing about whether she was *prevented* from doing so in spite of her own diligence. The Report and Recommendation erred by liberally construing a counseled brief. *See Meek v. Martin*, 74 F.4th 1223, 1276 (10th Cir. 2023) ("we cannot make arguments for an appellant") (internal quotation marks omitted); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (stating, in a case involving a *pro se* petitioner, "we do not believe it is the proper function of the district court to assume the role of advocate").

*Second*, the Report and Recommendation noted that "in her Response to the Motion to Dismiss, Petitioner sets forth a specific argument why equitable tolling should apply to her Petition. Doc. No. 11 at 6-12." Doc. 12 at 10 n.1. In that Response, Petitioner (again, through counsel) relied upon "the 'unique' facts" of her case and reiterated that she "had no cause to seek habeas review . . . ."[3] Doc. 11 at 6, 10. Not once, however, did Petitioner argue that she was *prevented* from timely filing her petition. Doc. 11 at 10. As to diligence, Petitioner argued she filed a post-conviction application "under *McGirt* shortly after that

---

[3] Petitioner's reliance upon precedent from the OCCA to the effect that challenges to a court's subject-matter jurisdiction may never be waived, Doc. 11 at 7-8, is a red herring. The state courts did not find Petitioner's claim waived. Rather, the issue was whether a new decision, *McGirt*, applied retroactively. The OCCA held that it does not, based on its established rules of non-retroactivity. *See Matloff*, 497 P.3d at 688-89 ("In state post-conviction proceedings, this Court has previously applied its own non-retroactivity doctrine—often drawing on, but independent from, the Supreme Court's non-retroactivity doctrine in federal habeas corpus—to bar the application of new procedural rules to convictions that were final when the rule was announced." (collecting cases from **as early as 1995**)); *id.* at 689 ("[W]e have long adhered to the principle that the narrow purposes of collateral review, and the reliance, finality, and public safety interests in factually accurate convictions and just punishments, weigh strongly against the application of new procedural rules to convictions already final when the rule is announced.").

opinion was announced." Doc. 11 at 10.

The Report and Recommendation errs in its reliance on these arguments because arguments made for the first time in a response or objection are waived. *See Thompkins v. McKune*, 433 F. App'x 652, 660 (10th Cir. 2011) (unpublished) ("arguments raised for the first time in a traverse are not properly presented to the district court, and we will not consider them on appeal"); *see also McMullin v. Bravo*, 530 F. App'x 693, 696 (10th Cir. 2013) (unpublished) ("[N]one of these errors were raised in [the petitioner's] original habeas petition.  All of these claims are therefore waived."); *but see Pinson v. Berkebile*, 528 F. App'x 822, 828 (10th Cir. 2013) (unpublished) (holding, contrary to *Thompkins*, that arguments raised for the first time in a reply in district court are not waived).  Although *Thompkins* is unpublished, it relied upon published authority from other circuits.  *See Thompkins*, 433 F. App'x at 659-60 (citing *Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005) (holding an argument "first presented in [the petitioner's] traverse rather than in his habeas petition" was not properly before the district court) and *Jackson v. Duckworth*, 112 F.3d 878, 880 (7th Cir. 1997) (declining to consider a ground for relief raised for the first time in a traverse)); *see also Jalowiec v. Bradshaw*, 657 F.3d 293, 311–12 (6th Cir. 2011), *as amended* (Nov. 23, 2011) (the district court properly refused to consider arguments raised for the first time in a traverse).

Similarly, in *Loya v. Whitten*, this Court refused to consider an argument made for the first time in the petitioner's reply brief even though Petitioner had counsel for the reply but did not have counsel when he filed the petition.  *Loya v. Whitten*, No. CIV-20-922-C, 2021 WL 3477710, at *4 n.5, *5 n.7 (W.D. Okla. June 7, 2021) (unpublished), *report and*

*recommendation adopted,* No. CIV-20-922-C, 2021 WL 3475580 (W.D. Okla. Aug. 6, 2021), *certificate of appealability denied,* No. 21-6102, 2022 WL 946939 (10th Cir. Mar. 30, 2022); *see also Camelin v. Warden, Se. Corr. Inst.*, No. 2:21-CV-4070, 2022 WL 683454, at *8 (S.D. Ohio Mar. 8, 2022) (unpublished), *report and recommendation adopted*, No. 2:21-CV-4070, 2022 WL 1442009 (S.D. Ohio May 6, 2022) ("a habeas petitioner may not raise new arguments for the first time in a traverse"); *Antonio Dewayne Hooks, Petitioner, v. Scott Crow, Warden, Respondent*, No. CIV-21-00592-PRW, 2022 WL 446825, at *1 (W.D. Okla. Feb. 14, 2022) (unpublished) ("arguments advanced for the first time in a reply brief are waived") (internal quotation marks omitted).

The Report and Recommendation should not have relied upon arguments made for the first time in a response, particularly because the petition was prepared by counsel.  In addition, the arguments made in the response are inadequate to satisfy Petitioner's burden on either requirement for equitable tolling.  This Court does not consider arguments that are inadequately briefed.  *See United States v. Harris*, No. CR-08-94-M, 2013 WL 12069034, *2 (W.D. Okla. Mar. 14, 2013) (unpublished); *Thomas v. Guffy*, No. CIV-07-823-W, 2008 WL 2884368, *1-2 (W.D. Okla. July 25, 2008) (unpublished); *cf. (John) Grant v. Trammell*, 727 F.3d 1006, 1025 (10th Cir. 2013) ("[e]ven a capital defendant can waive an argument by inadequately briefing an issue").  "The burden of proving circumstances that justify the application of the equitable tolling doctrine rests squarely on the petitioner.  Mere conclusory allegations are insufficient . . . ."  *San Martin v. McNeil*, 633 F.3d 1257, 1268 (11th Cir. 2011) (internal citation omitted).

Petitioner argued that she had no "need" to file the petition but made no attempt to show that she was *prevented* from doing so.  As will be discussed below, a change in the law is not a sufficient basis for equitable tolling.  This is in large part due to the fact that a habeas petitioner is not *prevented* from filing a petition simply because the law in effect during the statutory year is not in her favor.  Accordingly, Petitioner's arguments were inadequate.

As for diligence, Petitioner, through counsel, made *no* argument and she is not entitled to a liberal construction.  Again, she has waived any claim to equitable tolling and has failed to satisfy her burden.

Respondent respectfully asks this Court to reject the Report and Recommendation.

2. *Nothing* **Prevented** *Petitioner from Raising a Claim Based on Her Indian Status within the Statutory Year*

The Report and Recommendation found "Petitioner has established that extraordinary circumstances prevented her from filing a timely petition. . . . The sequence of events and various state actions underlying her request for habeas corpus relief did not begin until July 9, 2020, when the Supreme Court issued the *McGirt* decision."  Doc. 12 at 11.  Further, "a state court did not enter a ruling indicating that it would vacate a previous order authorizing Petitioner's release until April 18, 2023."  Doc. 12 at 11.  Respectfully, this finding misunderstands both Petitioner's basis for relief (the Major Crimes Act) and the nature of equitable tolling.

Courts may toll the limitations period for equitable reasons, but only where a petitioner has shown that she has diligently pursued her federal claims and that there were

extraordinary circumstances that prevented her from filing a timely petition.  *Fleming v. Evans*, 481 F.3d 1249, 1254 (10th Cir. 2007).  "Equitable tolling is a rare remedy to be applied in unusual circumstances."  *Yang v. Archuleta*, 525 F.3d 925, 929 (10th Cir. 2008) (quotation marks omitted).  The burden lies upon the Petitioner to make a specific showing that would justify this remedy.  *See id.* at 928.  This includes a showing "that the failure to timely file was caused by extraordinary circumstances beyond h[er] control."  *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000).

A change in the law does not warrant equitable tolling.  *Head v. Wilson*, 792 F.3d 102, 104-11 (D.C. Cir. 2015); *Whiteside v. United States*, 775 F.3d 180, 185-87 (4th Cir. 2014) (*en banc*); *Lo v. Endicott*, 506 F.3d 572, 574-76 (7th Cir. 2007) ("We have never held that a change in state substantive law constitutes an 'extraordinary circumstance' that warrants equitable tolling"); *E.J.R.E. v. United States*, 453 F.3d 1094, 1098 (8th Cir. 2006); *Shannon v. Newland*, 410 F.3d 1083, 1087–90 (9th Cir. 2005); *cf. Marsh*, 223 F.3d at 1220 (ignorance of the law does not provide a basis for equitable tolling); *Pitts*, 2022 WL 17834357 at *2-5 (refusing to apply equitable tolling to a *McGirt*  claim because "a jurisdictional claim under *McGirt* arises from ignorance of the law as it already existed prior to the decision").

Equitable tolling "focuses not on whether unfavorable precedent would have rendered a timely claim futile, but on whether a factor beyond the defendant's control prevented h[er] from filing within the limitations period at all."  *Whiteside*, 775 F.3d at 185; *accord E.J.R.E.*, 453 F.3d at 1098 ("The mere fact that our ruling in [another case] made it more likely that Appellants' collateral attack would be successful does not change

11

the reality that Appellants were free, at any time, to file their § 2255 petitions . . . ."); *Shannon*, 410 F.3d at 1090 (every case in which the Ninth Circuit has applied equitable tolling has involved "*wrongful* conduct" that "actually prevented the prisoner from preparing or filing a timely petition" (emphasis adopted)); *Gibson v. Klinger*, 232 F.3d 799, 808 (10th Cir. 2000) ("Equitable tolling would be appropriate, for example, when a prisoner is actually innocent, [or] when an adversary's conduct—or other uncontrollable circumstances—*prevents a prisoner from timely filing* . . . .") (emphasis added, citations omitted); *Williamson v. Nunn*, No. CIV-22-395-JD, 2022 WL 18397133, at *3-4 (W.D. Okla. June 28, 2022) (unpublished), *report and recommendation adopted*, No. CIV-22-00395-JD, 2022 WL 17986821 (W.D. Okla. Dec. 29, 2022) (denying request for equitable tolling based on *McGirt* because "there was no extraordinary circumstance that stood in [the petitioner's] way and prevented [him] from timely filing"); *Greene v. Nunn*, 606 F.Supp.3d 1108, 1116-17 (N.D. Okla. 2022) (unpublished) (declining to equitably toll the statute of limitations for a *McGirt* claim); *Mitchell v. Nunn*, 601 F.Supp.3d 1076, 1084 (N.D. Okla. 2022) (unpublished) ("Indian-country jurisdictional claims did not spring into existence only after *Murphy I* [*Murphy v. Royal*, 875 F.3d 896 (10th Cir. 2017), holding the Muscogee reservation was intact for purposes of the Major Crimes Act] and *McGirt* were decided."); *Sanders v. Pettigrew*, No. CIV-20-350-RAW-KEW, 2021 WL 3291792, *6 (E.D. Okla. Aug. 2, 2021) (unpublished) (declining to equitably toll the statute of limitations for a *McGirt* claim because nothing "impeded" the prisoner from timely filing) *cf. Barnett v. Oklahoma*, No. CIV-20-757-JD, 2020 WL 8768537, at *3-5 (W.D. Okla. Sept. 18, 2020) (unpublished), *report and recommendation adopted*, No. CIV-20-00757-

JD, 2021 WL 325716 (W.D. Okla. Feb. 1, 2021) (refusing to consider second or successive habeas petition raising *McGirt* claim because nothing prevented the petitioner from raising an Indian country claim in his first petition, even though it was filed before *McGirt*).

Although the Report and Recommendation did not reference subsections (B) or (C) of § 2244(d)(1), it may have implicitly adopted Petitioner's argument that her situation is analogous to the impediment or new rule of constitutional law contemplated by those sections. As explained in the Brief in Support of Motion to Dismiss, these subsections do not apply. Doc. 10 at 16-19. *See also Pitts*, 2022 WL 17361487 at *3 (refusing to apply § 2244(d)(1)(B), (C), or (D) to *McGirt* claim); *McDade v. Pettigrew*, No. CIV-22-845-JD, 2022 WL 17350926, at *3 (W.D. Okla. Oct. 24, 2022) (unpublished), *report and recommendation adopted,* No. CIV-22-00845-JD, 2022 WL 17345793 (W.D. Okla. Nov. 30, 2022) (§ 2244(d)(1)(C) does not apply to *McGirt* claims); *Rackley v. Whitten*, No. CIV-22-394-JD, 2022 WL 16942249, at *2-4 (W.D. Okla. Aug. 12, 2022), *report and recommendation adopted,* No. CIV-22-00394-JD, 2022 WL 16936046 (W.D. Okla. Nov. 14, 2022) (same as to subsections (C) and (D) of § 2244(d)(1)); *Smiley v. Crow*, No. CIV-22-0017-HE, 2022 WL 3326038, *2 (W.D. Okla. Aug. 11, 2022) (unpublished) ("The court does not view the <u>McGirt</u> decision as being some new 'fact' for purposes of this [equitable tolling] analysis . . . ."); *Caldwell v. Dowling*, No. CIV-22-340-JD, 2022 WL 4287937, *3-4 (W.D. Okla. June 23, 2022) (unpublished), *report and recommendation adopted as modified*, No. CIV-22-00340-JD, 2022 WL 3594905 (W.D. Okla. Aug. 23, 2022), *appeal dismissed*, No. 22-6185, 2023 WL 2705229 (10th Cir. Mar. 30, 2023) ("The Supreme Court's *McGirt* decision did not trigger a later start date for Petitioner's statutory year under

either § 2244(d)(1)(C) or § 2244(d)(1)(D) . . . ."); *Jones v. Pettigrew*, No. CIV-18-633-G, 2021 WL 3854755, at *2-3 (W.D. Okla. Aug. 27, 2021) (unpublished), *certificate of appealability denied,* No. 21-6106, 2022 WL 176139 (10th Cir. Jan. 20, 2022) (same as to subsections (B), (C), and (D) of § 2244(d)(1)); *cf. Lo*, 506 F.3d at 575-76 (rejecting argument that a state court's decision changing the law could function as a new factual predicate under § 2244(d)(1)(D)).

To permit equitable tolling for circumstances that are similar to, but fall short of, the alternate triggering dates in § 2244(d)(1)(B)-(D), would be to circumvent Congress's intent to limit the number of petitions filed more than one year after a conviction has become final.  *See Whiteside*, 775 F.3d at 187 ("Petitioner would circumvent Congress's highly refined statute of limitations, which specifically sets forth in § 2255(f)(3) [a similarly worded statute of limitations] when tolling would lie as a result of a change in law"); *Lo*, 506 F.3d at 575 (adopting the petitioner's argument "would render the limitations in § 2244(d)(1)(C) meaningless").

In sum, there were no extraordinary circumstances beyond Petitioner's control that prevented her from filing a habeas petition based on the Major Crimes Act by December 5, 2016.  *See* Doc. 12 at 11 (recognizing the statute of limitations under § 2244(d)(1)(A) expired on December 5, 2016).  The Report and Recommendation should not be adopted.

### 3.  Petitioner has not Been Diligent

Finally, the Report and Recommendation incorrectly found that Petitioner has been diligent.  Doc. 12 at 11-12.  As explained above, a claim under the Major Crimes Act could have been raised before Petitioner entered her plea or at any time thereafter.  Petitioner was

14

not diligent. *See Williamson*, 2022 WL 17986821 at *3 ("Mr. Williamson has only shown that he started diligently pursuing his rights after the Supreme Court decided *McGirt* in 2020, which was long after his limitations period had already expired."); *Pitts*, 2022 WL 17361487 at *4 (the petitioner was not diligent because the facts underlying his *McGirt* claim were available before *McGirt* was decided); *Mitchell*, 601 F.Supp.3d at 1084 ("[w]hile Mitchell's diligence in pursuing his jurisdictional claim, beginning in 2017, is commendable, it is not sufficient to overcome his lack of diligence for the nearly three decades that passed by before" then); *cf. E.J.R.E.*, 453 F.3d at 1098 ("Appellants' failure to file a direct appeal demonstrates a lack of diligence"). The Report and Recommendation should be rejected.

**B.     Petitioner did not Exhaust State Remedies.**

The Report and Recommendation's conclusion that the exhaustion requirement was satisfied by Petitioner's motion to strike the State's motion to vacate the grant of post-conviction relief, filed in the state district court, is contrary to Supreme Court precedent for two reasons. Doc. 12 at 13-17. *First*, the Supreme Court has held "that ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

The Report and Recommendation departs from *Baldwin* based on its view that "the OCCA Rules do not permit a response to an extraordinary writ unless the OCCA orders the same. Rule 10.4(A), Rules of the Oklahoma Court of Criminal Appeals." Doc. 12 at

13; *see also* Doc. 12 at 15 (stating that a response to an extraordinary writ is not "permitted" unless "the OCCA . . . directs the party" to file one).  On the contrary, the rule neither requires nor prohibits the filing of a response: "Oral argument and/or a response may be ordered by this Court."[4]  Rule 10.4(A), *Rules of the Oklahoma Court of Criminal Appeals*, Okla. Stat. tit. 22, Ch. 18, App.  As noted in the Brief in Support of Motion to Dismiss, Petitioner filed a response to the State's application for an extraordinary writ arising out of her improper pursuit of state habeas relief.  *See* Docs. 10 at 24-25; 10-27; 10-28; 10-29.  Further, the Report and Recommendation does not cite any cases in which the OCCA has refused to permit the filing of a response to an extraordinary writ application and Respondent is aware of none.  *Cf. Dutton v. Dixon*, 757 P.2d 376, 377 (Okla. Crim. App. 1988), *overruled by Cartwright v. State*, 778 P.2d 479 (Okla. Crim. App. 1989) (noting the Attorney General was granted permission to file an *amicus curiae* response).  Indeed, the OCCA has considered at least one response filed without consent.  *See State v. Martin*, 959 P.2d 982, 983 (Okla. Crim. App. 1998) ("The Court has not called for any response nor

---

[4] The Report and Recommendation relies upon an unpublished decision interpreting a New Mexico Rule of Appellate Procedure that "expressly contemplates" the New Mexico Supreme Court will consider the habeas petition filed in the district court.  Doc. 12 at 13-14 (citing *Gonzales v. Tafoya*, No. CIV 02-396 WJ/KBM, 2005 WL 8165193 (D.N.M. Feb. 1, 2005) (unpublished)).  The OCCA does not have a similar rule.  In fact, it appears that Petitioner's Motion to Strike was not before the OCCA.  *See* Doc. 10-42 (docket entries for OCCA No. PR-2022-370, in which the State's writ was granted and the state district court's order granting post-conviction relief was vacated).  Petitioner's motion to strike was not attached to the State's petition for writ of prohibition.  *See* Doc. 10-41.  The only other items filed in the OCCA were "Transcript-Stapled Copy, State's Motion to Vacate Order Granting Post-Conviction Relief 03/31/2022, 16 Pages, Copy Only") (all caps removed).  This fact makes the Report and Recommendation's suggestion that Petitioner's motion to strike properly presented her federal claim to the OCCA more untenable.

16

has Respondent filed one; however, on March 23, 1998, counsel for Defendant, on Defendant's behalf only, did file a pleading in response to the State's Application.").[5] The exhaustion requirement is not satisfied unless the petitioner has presented her federal claims to the highest state court. *Byrd v. Workman*, 645 F.3d 1159, 1165 n.7 (10th Cir. 2011). This requirement applies even when the highest state court's review is discretionary. *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999). Thus, the Report and Recommendation's reliance upon the lack of any "guarantee the OCCA would have granted such leave [for Petitioner to respond]", Doc. 12 at 15, is misplaced. Petitioner did not present any federal claims to the OCCA. The Report and Recommendation should be rejected.

*Second*, even considering the motion to strike, Petitioner admitted in her Response to the Motion to Dismiss that if her "motion to strike had stated simply that a ruling for the prosecution on the motion for reconsideration would violate Ms. Mars's due process rights, without elaborating why that was so, the state might have a point." Doc. 11 at 3-4. But that's exactly what she did. True, as Petitioner asserts, Doc. 11 at 4, she (fleetingly) invoked federal constitutional provisions after laying out the relevant facts. However, she

---

[5] The OCCA's rules regarding capital post-conviction applications contain similar language: "This Court may direct the respondent to file an answer brief if it deems one necessary . . . ." Rule 9.7((A)(5), *Rules of the Oklahoma Court of Criminal Appeals*, Okla. Stat. tit. 22, Ch. 18, App. The Oklahoma Attorney General's Office has filed many responses to capital post-conviction applications without being ordered to do so. The OCCA has never refused to consider these responses. *See, e.g.*, *Fuston v. State*, No. PCD-2022-286; *Wood v. State*, No. PCD-2022-550; *Tryon v. State*, No. PCD-2020-231; *Martinez v. State*, No. PCD-2017-951; *Johnson v. State*, No. PCD-2014-123. The docket entries for each of these cases is available at www.oscn.net.

cited no authority for any due process analysis and she cited only one, irrelevant, case for her "equal protection" claim.  Doc. 11 at 3.  *See Anderson v. Harless*, 459 U.S. 4, 6 (1982) ("It is not enough that all the facts necessary to support the federal claim were before the state courts").  The equal protection clause applies to statutory enactments.  *See Stogner v. California*, 539 U.S. 607, 610 (2003); *Landgraf v. USI Film Products*, 511 U.S. 244, 266 (1994); *United States v. Budder*, 76 F.4th 1007, 1012 (10th Cir. 2023).  Retroactive application of a court decision may violate the constitution, but as a matter of due process, not equal protection.  *See Budder*, 76 F.4th at 1012.  Thus, Petitioner's invocation of "equal protection" presented no federal claim based on the facts of her case to the OCCA.

As for due process, a violation of that protection can take *many* different forms.  *Cf. Gray v. Netherland*, 518 U.S. 152, 162 (1996) (discussing the petitioner's two distinct "due process" claims); *Anderson*, 459 U.S. at 7 (the petitioner's broad claim of a due process violation was not sufficient to exhaust the more specific due process claim raised on habeas); *(Donald) Grant v. Royal*, 886 F.3d 874, 894-95 (10th Cir. 2018) (the petitioner's substantive due process claim raised on direct appeal did not exhaust his procedural due process claim).  For that reason, "it is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court."  *Gray*, 518 U.S. at 163.  Even considering Petitioner's motion to strike, she did not fairly present any federal claim in state court.  The Petition is wholly unexhausted.

The Report and Recommendation should be rejected.

## <u>CONCLUSION</u>

For the foregoing reasons, Respondent respectfully asks this Court to reject the

Report and Recommendation and dismiss the instant Petition for Writ of Habeas Corpus

as time-barred or, alternatively, as unexhausted.

Respectfully submitted,

**GENTNER F. DRUMMOND
ATTORNEY GENERAL OF OKLAHOMA**

**s/ JENNIFER L. CRABB**
**JENNIFER L. CRABB, O.B.A. #20546**
**ASSISTANT ATTORNEY GENERAL**
313 N.E. 21st Street
Oklahoma City, OK 73105
Phone: (405) 521-3921
Fax: (405) 522-4534
**Service email: fhc.docket@oag.ok.gov**

**ATTORNEYS FOR RESPONDENT**

## <u>CERTIFICATE OF SERVICE</u>

<u>X</u>      I hereby certify that on the 8th day of November 2023, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

David Autry
1021 N.W. 16th Street
Oklahoma City, OK 73106
Dbautry77@gmail.com

s/ Jennifer L. Crabb

19

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

CLARISSA MARIE MARS,                         )
                                             )
                    Petitioner,              )
                                             )
v.                                           )        Case No. CIV-23-00606-JD
                                             )
TAMIKA WHITE, Warden,                        )
                                             )
                    Respondent.              )

## ORDER

Before the Court is the Report and Recommendation ("R. & R.") [Doc. No. 12] of

United States Magistrate Judge Gary M. Purcell, to whom this 28 U.S.C. § 2254[1] action

was referred for initial proceedings in accordance with 28 U.S.C. § 636(b)(1)(B). In her

Petition, Mars alleges two grounds on which she claims she is being held unlawfully—

---

[1] Petitioner Clarissa Marie Mars ("Mars") styles her pleading as a Petition Under 28 U.S.C. §§ 2241 and 2254 for Writ of Habeas Corpus by a Person in State Custody ("Petition") [Doc. No. 1]. The Court construes the Petition as seeking relief under § 2254. *See McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997) (explaining that § 2241 petitions "are used to attack the execution of a sentence . . . in contrast to § 2254 habeas and § 2255 proceedings, which are used to collaterally attack the validity of a conviction and sentence" (citations omitted)). Regardless, exhaustion of available state remedies is a prerequisite for both § 2241 and § 2254 habeas relief. *See Garza v. Davis*, 596 F.3d 1198, 1203 (10th Cir. 2010) (explaining that exhaustion is required for § 2241 habeas relief despite the statute itself not expressly containing such a requirement); *Wilson v. Jones*, 430 F.3d 1113, 1118 (10th Cir. 2005) ("A habeas petitioner seeking [§ 2241] relief . . . is generally required to exhaust state remedies."); *Montez v. McKinna*, 208 F.3d 862, 866 (10th Cir. 2000) (explaining that a "habeas petitioner is generally required to exhaust state remedies whether his action is brought under § 2241 or § 2254"). And both § 2241 and § 2254 petitions are subject to the statute of limitations in the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See Burger v. Scott*, 317 F.3d 1133, 1138 (10th Cir. 2003) (recognizing that § 2241 petitions "are subject to a one-year period of limitations" in § 2244(d)).

the first of which is a due process claim that Mars' Fourteenth Amendment liberty interest was violated when her state judgment and conviction was reinstated, and she was reincarcerated. [Doc. No. 1 at 9].[2] Mars alleges in the second ground that *McGirt* applies retroactively to cases on collateral review. [Doc. No. 1 at 13].

Judge Purcell recommended that Respondent's Pre-Answer Motion to Dismiss Petition Under 28 U.S.C. §§ 2241 and 2254 as Time-Barred and Unexhausted ("Motion to Dismiss") [Doc. No. 9] be denied and that Respondent ("the State") be directed to file a response to the merits of Mars' Petition. R. & R. at 17. Specifically, Judge Purcell concluded that Mars was entitled to equitable tolling of the statute of limitations and that it is "nonsensical to hold [Mars] to a one-year deadline from her initial conviction date when the events underlying her request for habeas relief did not happen for several years thereafter." R. & R. at 11. Additionally, Judge Purcell concluded that Mars had exhausted her available state court remedies. *See id.* at 12–17.

Within the time limits authorized by the Court, the State filed objections to the R. & R. [Doc. No. 14].[3] Accordingly, the Court must make a de novo determination of any portion of the R. & R. to which a specific objection is made, and may accept, modify, or reject the recommended decision in whole or in part. 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3).

---

[2] The Court uses CM/ECF page numbering from the top of docket filings.

[3] Neither party has filed anything since then.

2

Upon de novo review of the issues presented and for the reasons stated herein, the Court declines to adopt the recommended rulings in the R. & R. [Doc. No. 12], grants the State's Motion to Dismiss [Doc. No. 9], and dismisses without prejudice Ground One of Mars' Petition [Doc. No. 1] as unexhausted and dismisses with prejudice Ground Two of Mars' Petition as untimely [Doc. No. 1].

## I.    **<u>BACKGROUND</u>**

On November 23, 2015, Mars pled guilty in the District Court of Garvin County, Oklahoma, to one count of Lewd or Indecent Acts to a Child Under Sixteen and was sentenced to 10 years' imprisonment with all but the first 9 months suspended. [Doc. No. 1-1 at 2]. While Mars was on supervised probation, the State sought to revoke her suspended sentence for violations of her probation. [Doc. Nos. 10-7 and 10-10]. At the hearing held on July 25, 2017, Mars admitted to the violations, and the district court revoked 5 years of her suspended sentence. [Doc. Nos. 10-11, 10-12, and 10-13].

On June 20, 2018, Mars filed an Application for Judicial Review of Sentence, which the district court denied on July 10, 2018. [Doc. Nos. 10-14 and 10-15]. The following year, on April 15, 2019, Mars again filed for judicial review of her sentence, which the district court denied on June 13, 2019. [Doc. Nos. 10-16 and 10-18].

On July 9, 2020, the Supreme Court issued its decision in *McGirt v. Oklahoma*, 591 U.S. ----, 140 S. Ct. 2452 (2020). McGirt had argued in postconviction proceedings that the State of Oklahoma lacked jurisdiction to prosecute him because he was an enrolled member of the Seminole Nation, and his crimes took place on the Creek Reservation. *See id.* at 2459. The Supreme Court held that because Congress did not

3

disestablish the Creek Reservation, the land within the historical boundaries of that reservation is "Indian country," as defined in 18 U.S.C. § 1151(a), and, as a result, the federal government has exclusive jurisdiction to prosecute certain crimes committed within those boundaries. *See id.* at 2468, 2479–80.

The following day, Mars, represented by counsel,[4] filed a petition for a writ of habeas corpus in Pottawatomie County District Court, the county in which she was confined. [Doc. No. 10-19]. Mars, citing to *McGirt*, asserted that Garvin County lacked jurisdiction to initiate a State prosecution against her since she is Native American and a member of the Citizen Potawatomi Nation. [Doc. No. 10-19 at 1]. Additionally, she asserted that she was serving an illegal sentence at the Mabel Basset Correctional Center, located within the jurisdiction of Pottawatomie County. *See id.* at 2. The State moved to dismiss the petition arguing it was filed in the wrong county because Mars was convicted in Garvin County, and she had failed to exhaust the appropriate statutory procedures for appealing her Garvin County judgment and sentence since she had never filed a direct appeal or an application for post-conviction relief. [Doc. No. 10-21]. Mars filed a response in opposition. [Doc. No. 10-22].

On July 31, 2020, the Pottawatomie County District Court held a hearing on Mars' petition for writ of habeas corpus and orally denied the State's motion to dismiss. [Doc.

---

[4] According to the documents filed of record here and taking judicial notice of state court records that are available to the public through the Oklahoma State Courts Network (https://www.oscn.net), Mars was represented by attorneys Jaye Mendros and Bert Richard from on or about July 10, 2020, through on or about April 20, 2023. David Autry represents her in this federal habeas action.

No. 10-23 at 12–13]. However, it agreed to stay its order while the State sought a writ of prohibition in the Oklahoma Court of Criminal Appeals ("OCCA"). [Doc. No. 10-25].

After the State filed its petition for a writ of prohibition (PR-2020-526) with the OCCA, Mars' attorneys, Mendros and Richard, filed a motion on Mars' behalf requesting leave to respond to the State's petition. [Doc. Nos. 10-26 and 10-27]. The OCCA granted Mars' attorneys' request to file a response, and Mars filed a response brief on August 25, 2020. [Doc. Nos. 10-28 and 10-29].

On September 11, 2020, the OCCA granted the State's writ of prohibition and remanded the matter to the District Court of Pottawatomie County. [Doc. No. 10-30]. The OCCA concluded that Mars should have filed an application for post-conviction relief, rather than a petition for a writ of habeas corpus, and that her challenge to her judgment and sentence lie in the county where her conviction was imposed. *See id.* at 4.

Subsequently, on October 13, 2020, Mars, through counsel, filed an application for post-conviction relief in Garvin County District Court asserting her *McGirt* claim. [Doc. No. 10-31]. The State responded in opposition. [Doc. No. 10-32].

On March 11, 2021, the OCCA issued a decision in *Bosse v. State*, 484 P.3d 286 (Okla. Crim. App. 2021) (withdrawn). [Doc. No. 10-33]. Therein, the OCCA held that because challenges to subject matter jurisdiction could be raised at any time, *McGirt* provided "a previously unavailable legal basis for this claim." *See id.* at 19. The OCCA stayed issuance of the mandate for 20 days. *Id.* at 24. On March 31, 2021, the OCCA extended the stay on issuance of the mandate pending its ruling on the State's motion for

leave to file a petition for rehearing. [Doc. No. 10-34 at 5]. On April 7, 2021, the OCCA

denied the State's motion and issued the mandate for the *Bosse* decision. *Id.* at 5–6.

Meanwhile, Mars' application for post-conviction relief was pending in Garvin

County District Court. On March 30, 2021, after the *Bosse* decision, but before its

mandate, the Garvin County District Court, noting the parties' stipulations that Mars was

Indian and her offense occurred within the boundaries of the Chickasaw Nation, ordered

the case dismissed and ordered Mars' immediate release. [Doc. No. 10-35]. Relying on

*Bosse*, the court stated it "lack[ed] subject matter jurisdiction," and post-conviction relief

was appropriate. *See id.* The State did not appeal or otherwise challenge the court's

ruling. *See id.* ("State does not request a ten-day stay of this court's order."). The

Oklahoma Department of Corrections ("ODOC") released Mars from its custody the

same day. [Doc. No. 10-36].

However, just a few months later, the OCCA overruled *Bosse* in *State ex rel.

Matloff v. Wallace*, stating that *McGirt* was a procedural change of law and did not

retroactively void convictions that were already final when *McGirt* was decided. 497 P.3d

686, 689 (Okla. Crim. App. 2021). The OCCA subsequently vacated and withdrew *Bosse*

based on its application of *Wallace*. *Bosse v. State*, 495 P.3d 669 (Okla. Crim. App.

2021); *see also Bosse v. State*, 499 P.3d 771, 774 (Okla. Crim. App. 2021).

Relying on *Wallace*, the State filed a motion to vacate the Garvin County District

Court's order granting Mars post-conviction relief. [Doc. No. 10-37]. Mars, through her

counsel Mendros and Richard, specially appeared and moved to strike the State's motion

as untimely since the time for appeal had expired. [Doc. No. 10-38]. Additionally, Mars

asserted in her motion to strike that "[a]ny retroactive application of *Wallace* to [her] is . . . an ex post facto violation and is contrary to Article II, § 15 of the Oklahoma Constitution and Art. I, § 9 of the U.S. Constitution" and "violates [her] due process and equal protection rights." *See id.* at 5–6. Mars further asserted that "'un-doing' an un-appealed final order months after [her] release from custody" would make "a mockery of the Constitution" and would ignore "numerous statutory and procedural bars." *See id.* at 6.

Taking note of the critically different procedural history in *Wallace*, the Garvin County District Court noted that the State did not request a stay, petition for a writ of prohibition, or appeal the court's order granting post-conviction relief to Mars. [Doc. No. 10-40 at 6–7]. The court concluded that the State's "lack of action led to [the] court's order becoming final," and it denied the State's motion to vacate on March 31, 2022. *See id.* at 7.

On April 21, 2022, the State filed a petition for writ of prohibition or, in the alternative, writ of mandamus with the OCCA, asserting that extraordinary relief was warranted in light of *Wallace* and requesting that the OCCA exercise its prohibition power to order the Garvin County District Court to grant the State's motion to vacate and reinstate Mars' conviction. [Doc. No. 10-41 at 1–2]. Mars' counsel was served with a copy of the State's petition. *See id.* at 15. Attached to the State's petition was a certified copy of the Garvin County District Court's order denying the State's motion to vacate pursuant to Rule 10.5(3), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. [Doc. No. 10-41 at 22–28]. The State's petition does not reference Mars' motion

to strike filed in Garvin County District Court in response to the State's motion to vacate, nor does the State attach Mars' motion to strike to its petition. *See* [Doc. No. 10-41].

Although Mars and her counsel, Mendros and Richard, sought leave to respond to the State's earlier petition for writ of prohibition (PR-2020-526) and the OCCA granted the request [Doc. Nos. 10-27 and 10-28], they did not seek leave to respond to this petition by the State (PR-2022-370), despite the petition pending for almost an entire year.

On April 18, 2023, almost a year after the State's petition was filed, the OCCA granted the State a writ of mandamus and ordered the District Court of Garvin County to vacate its March 30, 2021 order granting Mars post-conviction relief and ordered it to reinstate her judgment and sentence. [Doc. No. 10-47 at 6].[5] On April 20, 2023, the District Court of Garvin County reinstated Mars' judgment and sentence. [Doc. No. 10-48]. Mars was returned to ODOC custody on May 18, 2023. [Doc. No. 10-36].

Mars filed the instant action on July 13, 2023, asserting (1) that the OCCA's order directing the state district court to vacate its grant of Mars' post-conviction relief and reinstate her conviction and sentence violated her due process and equal protection rights and (2) that *McGirt* retroactively voided her conviction. [Doc. Nos. 1, 6, and 11]. The State seeks dismissal of Mars' Petition, asserting it is untimely, or alternatively, that Mars' state remedies are unexhausted. [Doc. Nos. 9, 10, and 14].

---

[5] The OCCA noted that its decision in *Bosse* was not final at the time the District Court of Garvin County granted post-conviction relief to Mars and therefore was not authorized by law. *See* [Doc. No. 10-47 at 3–4].

8

Judge Purcell recommended that the State's Motion to Dismiss be denied. R. & R. at 17. He assumed without deciding that Mars' conviction became final on December 3, 2015, so absent statutory or equitable tolling, her one-year filing period expired on Monday, December 5, 2016. *See id.* at 9. He then explained that it was "not necessary to consider statutory tolling or whether a separate starting date applies under § 2244(d)(1)(B)–(D) because the record establishes [Mars] is entitled to equitable tolling of the statute of limitations." *See id*.

Contrary to the State's argument that Mars did not exhaust her state court remedies because she did not file a response to the State's petition for writ of prohibition (PR-2022-370), Judge Purcell concluded that she had. Relying on *Gonzales v. Tafoya*, No. CIV 02-396 WJ/KBM, 2005 WL 8165193 (D.N.M. Feb. 1, 2005), but also conceding the case was "not directly on point," Judge Purcell explained, in pertinent part:

> the OCCA Rules specifically provide that a party may only file a response to a petition for writ of mandamus if the OCCA orders the party to do so. Rule 10.4(A), Rules of the Oklahoma Court of Criminal Appeals. Here, the OCCA did not direct Petitioner to file a response. Thus, as in *Gonzales*, the OCCA Rules specifically contemplate that the Justices may consider the lower court opinion and/or record in making its decision. Additionally, although the OCCA Rules do not address a party's ability to request leave of court to file a response, both parties and the underlying record herein indicate a party may do so. However, there is no guarantee the OCCA would have granted such leave. Regardless, it can hardly be concluded that a party failed to exhaust state court remedies by not filing a response that is neither permitted nor contemplated under the applicable procedural rules, unless the OCCA directs the party to do so.

R. & R. at 15. The State timely objected to the R. & R. [Doc. No. 14].

The State asserts that the R. & R.'s conclusion that exhaustion was satisfied by Mars' motion to strike, filed in Garvin County District Court, is contrary to Supreme

Court precedent. [Doc. No. 14 at 22].[6] Additionally, the State contends that Mars' motion to strike was not before the OCCA. *See id.* at 23 n.4. Even considering the content of Mars' motion to strike, the State asserts the motion does not fairly present any federal claim to the state court. *See id.* at 24–25. Finally, the State asserts that nothing prevented Mars from raising a claim based on her Indian status within a year of her conviction. *See id.* at 17. The State argues § 2244(d)(1)(B)–(D) does not apply to *McGirt* claims. *Id.* at 20.

## II.   ANALYSIS

### A.   Exhaustion—Ground One (Due Process Claim)

"AEDPA prohibits federal courts from granting habeas relief to state prisoners who have not exhausted available state remedies." *Ellis v. Raemisch*, 872 F.3d 1064, 1076 (10th Cir. 2017). "In this regard, § 2254(b)(1) states, '[a]n application for a writ of habeas corpus . . . shall not be granted unless it appears that[] . . . the applicant has exhausted the remedies available in the courts of the State . . . .'" *Id.* (quoting 28 U.S.C. § 2254(b)(1)(A)). Section 2254(c) clarifies that an applicant does not exhaust available state court remedies within the meaning of § 2254 "if he has the right under the law of the State to raise, by any *available* procedure, the question presented." 28 U.S.C. § 2254(c) (emphasis added).

---

[6] The State also asserts in its Objection that Mars is not entitled to equitable tolling of the statute of limitations. [Doc. No. 14 at 9–22]. However, the Court does not reach this argument (or any issue as to timeliness) on Mars' due process claim because it dismisses it as unexhausted. *Cf. Harris v. Champion*, 15 F.3d 1538, 1554 (10th Cir. 1994) (acknowledging that exhaustion is a "threshold" inquiry).

Exhaustion is a "'threshold question that must be addressed in every habeas case.'" *Fontenot v. Crow*, 4 F.4th 982, 1018 (10th Cir. 2021) (quoting *Harris*, 15 F.3d at 1554). The doctrine of exhaustion "reflects a policy of comity, whereby a federal court will not interfere with a state court conviction without giving the state courts an opportunity to correct any alleged [federal] constitutional violations." *Hernandez v. Starbuck*, 69 F.3d 1089, 1092 (10th Cir. 1995). In Oklahoma cases, the doctrine requires that the petitioners must fairly present their claims to the OCCA. *See Byrd v. Workman*, 645 F.3d 1159, 1164 n.7 (10th Cir. 2011).

"To exhaust a claim, a state prisoner must pursue it through one complete round of the State's established appellate review process, giving the state courts a full and fair opportunity to correct alleged constitutional errors." *Fontenot*, 4 F.4th at 1019 (internal quotation marks and citations omitted). A habeas claim has been exhausted "when it has been 'fairly presented' to the state court." *See id.* (quoting *Bland v. Sirmons*, 459 F.3d 999, 1011 (10th Cir. 2006)). "[T]he crucial inquiry is whether the 'substance' of the petitioner's claim has been presented to the state courts in a manner sufficient to put the courts on notice of the federal constitutional claim." *Prendergast v. Clements*, 699 F.3d 1182, 1184 (10th Cir. 2012) (citations omitted). "The petitioner bears the burden of proving either that state remedies were exhausted or that exhaustion would have been futile." *Fontenot*, 4 F.4th at 1020 (citing *Selsor v. Workman*, 644 F.3d 984, 1026 (10th Cir. 2011)).

In her response to the State's Motion to Dismiss, Mars argues that (1) by filing the motion to strike the State's motion to vacate in Garvin County District Court, she

sufficiently exhausted her remedies in state court, and (2) her due process argument was

properly presented because the OCCA "had before it the very order the state was

challenging in its mandamus petition," which she asserts adopted her arguments. [Doc.

No. 11 at 5].[7] Conversely, in its objection to the R. & R., the State contends that Mars'

Petition does not meet § 2254's exhaustion requirement. It also argues that the R. & R.'s

analysis contradicts *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

Section X of the Rules of the Court of Criminal Appeals addresses the

requirements and procedures when petitioning the OCCA for extraordinary writs. For

example, when petitioning for a writ of prohibition (or any other extraordinary writ), the

petitioner seeking the writ, in this case the State, must file a variety of documents

including "[a] certified copy of the original record *applicable to the writ* which shall

include a copy of the order entered by the trial court" that is being challenged. Rule

10.1(C)(2), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App.

(emphasis added). Attached to the petition for extraordinary writ should be a "certified

copy of the District Court order" at issue. Rule 10.5(3), *Rules of the Oklahoma Court of

Criminal Appeals*, Title 22, Ch. 18, App. Additionally, "[o]ral argument and/or a

---

[7] Although Mars relies, in part, on the Northern District of Oklahoma's recent decision in *Graham v. White*, --- F. Supp. 3d ----, 2023 WL 4141662 (N.D. Okla. June 22, 2023) for the merits of her due process claim, she concedes that procedurally her case is different. [Doc. No. 11 at 9–10 n.3]. *Graham* is currently on appeal to the Tenth Circuit. *See* Case No. 23-5069. In *Graham*, the State conceded that Graham had exhausted her available state remedies as to her Fourteenth Amendment due process claim, and the State did not contest the timeliness of Graham's federal habeas petition. *See Graham*, 2023 WL 4141662, at *12 n.12 and 13 n.14. Here, in contrast, the State challenges both.

response may be ordered by [the OCCA]." Rule 10.4(A), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App.

Thus, the question is whether Mars has met her burden of proving she exhausted her state remedies by filing her motion to strike in Garvin County District Court when there is no evidence of record the motion was before the OCCA. The Court concludes that she has not met her burden of pursuing one complete round of the State's established appellate review process. The exhaustion requirement "creates a strong presumption in favor of requiring the prisoner to pursue his *available* state remedies." *Fontenot*, 4 F.4th at 1019 (emphasis added) (quotations omitted) (quoting *Bear v. Boone*, 173 F.3d 782, 784 (10th Cir. 1999)). As noted by both parties and of record, Mars and her same counsel filed a motion requesting leave to respond the first time the State filed a petition for a writ of prohibition (PR-2020-526), and the OCCA granted Mars' request. [Doc. Nos. 10-27 and 10-28]. Therefore, although it is understood that, under Rule 10.4(A), parties cannot automatically file responses, the record shows that parties can seek leave to do so—i.e., requesting leave to respond is *available* to them.

Thus, Rule 10.4(A) neither requires nor prohibits the filing of a response. Further, it appears to be the OCCA's practice to grant leave to respond when leave is requested.[8] *See, e.g.*, *Dutton v. Dixon*, 757 P.2d 376, 377 (Okla. Crim. App. 1988), *overruled by*

---

[8] No authority has been presented to the Court in which the OCCA has refused to permit the filing of a response, nor could the Court find a case in which it had. Indeed, the OCCA has considered at least one response brief filed without its consent. *See State v. Martin*, 959 P.2d 982, 983 (Okla. Crim. App. 1998) (noting that the Court had "not called for any response," but that counsel for the defendant, on the defendant's behalf only, had filed a response).

*Cartwright v. State*, 778 P.2d 479 (Okla. Crim. App. 1989) (noting the Attorney

General's Office was granted leave to file an *amicus curiae* response). Additionally, as

the State points out, Section IX, which addresses the requirements and procedures for

appeals in capital cases before the OCCA, contains similar language at Rule 9.7(A)(5). It

provides that the OCCA "may direct the respondent to file an answer brief if it deems one

necessary to the resolution of the issues raised in the petitioner's application and brief."

Rule 9.7(A)(5), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App.

The State has filed responses to capital post-conviction applications in cases without

leave and without being ordered to do so by the OCCA. *See, e.g.*, *Fuston v. State*, No.

PCD-2022-286; *Wood v. State*, No. PCD-2022-550; *Tryon v. State*, No. PCD-2020-231;

*Martinez v. State*, No. PCD-2017-951; *Johnson v. State*, No. PCD-2014-123.

Here, Mars did not utilize the process of seeking leave to respond to the State's

petition for a writ despite this process being available to her and despite having done so

before with the same set of attorneys. The Court notes that the State's petition remained

pending for almost a year; thus, there was ample time to respond. This further aligns with

the Supreme Court's rejection of the notion that "a petitioner 'fairly presents' a federal

claim when an appellate judge can discover that claim only by reading lower court

[records]." *Baldwin*, 541 U.S. at 31. So, even though the OCCA presumably had access

to the lower court's record and Mars' motion to strike, "the law does not impose" on the

OCCA the "requirement" that it "must read" the lower court records to locate a federal

constitutional claim. *See id.* ("Appellate judges, of course, will often read lower court

opinions, but they do not necessarily do so in every case. Sometimes an appellate court

can decide a legal question on the basis of the briefs alone."). Yet, because Mars did not

flag her due process claim for the OCCA, that is exactly what the OCCA would have had

to do to discover it.

Additionally, there is no evidence of record that Mars' motion to strike was before

the OCCA. Attached to the State's petition was a certified copy of the Garvin County

District Court's order denying the State's motion to vacate. [Doc. No. 10-41 at 22–28].

The State's petition does not reference Mars' motion to strike, nor does the State attach

Mars' motion to strike to its petition. *See* [Doc. No. 10-41]. The OCCA does not

reference Mars' motion to strike in its order granting the writ of mandamus. [Doc. No.

10-47].

Admittedly, it was the State's petition for writ that advanced the issue to the

OCCA of whether Mars' conviction could be reinstated. However, given the requirement

that petitioners take advantage of the state corrective processes available to them and

seek to fairly present their claims to the state's highest court, the Court concludes that

Mars has not met the burden of showing she has exhausted her state court remedies as to

her due process claim or that seeking to do so would be useless when she could have

sought leave to respond to the State's petition.

The Court disagrees with Judge Purcell's reliance on *Gonzales v. Tafoya*, a 2005

unpublished decision from the District of New Mexico, which interpreted a New Mexico

Rule of Appellate Procedure and is factually distinguishable from Mars' case. 2005 WL

8165193. Even Judge Purcell noted the case was "not directly on point." R. & R. at 13.

There, the District of New Mexico ultimately concluded that "the pre-printed habeas and

certiorari forms that [the court] ha[d] seen time and again . . . . plainly alert[ed] the New Mexico Supreme Court to the 'federal nature' of [the petitioner's] claims, since he assert[ed] his 'federal . . . constitutional rights were violated.'" 2005 WL 8165193, at *2–3. Whereas here, Mars did not alert the OCCA to the federal nature of her claims because she did not respond to the State's petition.

The District of New Mexico noted, in response to the respondent's argument that *Baldwin* was applicable, and that the New Mexico Rules were not relevant, that the appellate rule at issue there "expressly contemplate[d]" that the New Mexico Supreme Court justices would consider documents beyond the petition in making their decision. *See id*. at *2 (citing New Mexico Rule of Appellate Procedure 12-501(C)). Although Rule 12-501(C), which is now Rule 12-501(D), specifies what documents can be attached to a petition for writ of habeas corpus in the New Mexico Supreme Court, contrary to the District of New Mexico's interpretation, the rule does not expressly contemplate that the New Mexico Supreme Court justices will consider those documents in making their determination. Nor does it impose any requirement on them to read the lower court opinions.

Similarly, although it is the petitioner's responsibility to ensure that a "certified copy of the original record applicable to the writ" is filed with the OCCA's clerk of court, Section X of the OCCA's Rules applicable to extraordinary writ procedures does not impose any requirement on the OCCA to read the lower court record. *See* Rule 10.1(C)(1), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. The R. & R. notes that, had Mars requested leave to respond to the State's petition, there is no

guarantee the OCCA would have granted it. R. & R. at 15. However, Mars only needed

to present the OCCA with "an opportunity to . . . correct [the] constitutional violation,"

regardless of whether the highest court refused to do so. *McCormick v. Kline*, 572 F.3d

841, 851 (10th Cir. 2009). The Court finds that she failed to do so with her due process

claim and dismisses her due process claim without prejudice. *See Bland v. Sirmons*, 459

F.3d 999, 1012 (10th Cir. 2006) ("Generally, a federal court should dismiss unexhausted

claims without prejudice so that the petitioner can pursue available state-court

remedies.").

### B.      Statute of Limitations—Ground Two (*McGirt* Claim)

Under the AEDPA, a one-year statute of limitations applies to the filing of a

federal habeas petition. *See* 28 U.S.C. § 2244(d)(1). The limitations period begins to run

from the latest of four dates: (A) the date on which the judgment became final by the

conclusion of direct review or expiration of the time to seek direct review; (B) the date on

which an unconstitutional or unlawful impediment to filing an action was removed; (C)

the date on which a new constitutional right was initially recognized by the Supreme

Court and made retroactively applicable to cases on collateral review; and (D) the date on

which the factual predicate of the claim presented could have been discovered through

the exercise of due diligence. *Id.* § 2244(d)(1)(A)–(D).

The time during which a properly filed state post-conviction application or other

collateral review is pending is excluded from computation of the limitations period. *See*

*id.* § 2244(d)(2). Additionally, the statute of limitations may be equitably tolled, but only

in "rare and exceptional circumstances." *Sigala v. Bravo*, 656 F.3d 1125, 1127 (10th Cir.

2011) (internal quotation marks and citation omitted). A litigant seeking equitable tolling "'bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.'" *See id.* at 1128 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

The record shows that Mars was sentenced on November 23, 2015, following her guilty plea. [Doc. No. 1-1 at 2]. She did not withdraw her plea or otherwise seek to timely appeal her judgment and sentence. Thus, her conviction became final on December 3, 2015, 10 days after entry of the judgment and sentence. Rule 4.2(A), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App.; Okla. Stat. tit. 22, § 1051. The statutory year began to run the next day on December 4, 2015, and it expired on December 5, 2016.[9] *See Harris v. Dinwiddie*, 642 F.3d 902, 906 n.6 (10th Cir. 2011) (stating that the year begins to run the day after the judgment and sentence becomes final and ends on the anniversary date). Thus, Mars' Petition, filed on July 13, 2023, was untimely under § 2244(d)(1)(A).

Mars did not initiate her state post-conviction proceedings until October 13, 2020, after expiration of the limitations period, so there is no statutory tolling under § 2244(d)(2). Additionally, Mars has not shown that the State prevented her from discovery of her *McGirt* claim or prevented her from filing a federal habeas claim before

---

[9] Because December 4, 2016, was a Sunday, the deadline was extended to Monday, December 5, 2016. *See* Fed. R. Civ. P. 6(a)(1)(C) (stating that in computing time, "if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday").

July 13, 2023. Because Mars cannot demonstrate any impediment by the State that

thwarted her from advancing her *McGirt* claim, she cannot apply a commencement date

under § 2244(d)(1)(B). *See, e.g.*, *Jones v. Crow*, 636 F. Supp. 3d 1349, 1353–54 (E.D.

Okla. 2022) (noting that almost all the documents underlying *McGirt* had been available

for more than a century before the petitioner was convicted and that his failure to inquire

into the state's prosecutorial authority or conduct any legal research before *McGirt* was

decided was not attributable to the state).

Also, Mars cannot establish a new starting date under § 2244(d)(1)(C) for her

*McGirt* claim. The Tenth Circuit has explained that *McGirt* did not recognize a new

constitutional right that would reset the limitations period for a state prisoner's federal

habeas claim. *Pacheco v. Habti*, 62 F.4th 1233, 1246 (10th Cir. 2023). Mars also does not

attempt to show that the start date for the *McGirt* claim should be § 2244(d)(1)(D), nor

could she. *See Johnson v. Louthan*, No. 22-5064, 2022 WL 4857114, at *3 (10th Cir. Oct.

4, 2022) (unpublished) (rejecting the petitioner's claim that *McGirt* could serve as "a

newly discovered predicate fact under § 2244(d)(1)(D)"); *see also Ford v. Dowling*, No.

22-6138, 2023 WL 2641476, at *3 (10th Cir. Mar. 27, 2023) (unpublished) (concluding

that "§ 2244(d)(1)(D) is inapplicable because nothing in *McGirt* can be said to reveal a

new factual predicate for [the petitioner's] claim").

Finally, Mars has not demonstrated "specific facts to support [her] claim of

extraordinary circumstances and due diligence," i.e., equitable tolling as to her *McGirt*

claim. *See Yang v. Archuleta*, 525 F.3d 925, 928 (10th Cir. 2008). The Court finds that

there is no evidence in the record to suggest that some extraordinary circumstance

impeded Mars from timely filing of her *McGirt* claim (Ground Two) in federal court. Thus, there is no applicable equitable tolling to the AEDPA's one-year limitation period for Ground Two, and Ground Two should be dismissed with prejudice.[10]

## III.   <u>APPEALABILITY</u>

Under Rule 11(a) of the Rules Governing Section 2254 Cases, the Court must issue or deny a certificate of appealability when it enters a final order adverse to a petitioner. A certificate of appealability may issue only if Mars "has made a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Upon consideration, the Court finds this standard is not met. *See id.* at 484–85. Because Mars cannot make the required showing, the Court declines to issue a certificate of appealability.

---

[10] An untimely habeas petition results in a dismissal with prejudice by operation of law. *See Taylor v. Martin*, 757 F.3d 1122, 1123 (10th Cir. 2014) (denying a certificate of appealability and dismissing the appeal where the district court dismissed with prejudice untimely § 2254 habeas petition); *see also McDowell v. Zavaras*, 417 F. App'x 755, 756–57 (10th Cir. 2011) (unpublished) (explaining that a habeas petition "denied as time-barred" is "a dismissal . . . on the merits") (citing cases); *Brown v. Roberts*, 177 F. App'x 774, 778 (10th Cir. 2006) (unpublished) ("Dismissal of a petition as time barred operates as a dismissal with prejudice.").

IV.     **CONCLUSION**

Upon de novo review of the issues presented, the Court declines to adopt the

recommended rulings in the R. & R. [Doc. No. 12]. The Court GRANTS the State's

Motion to Dismiss [Doc. No. 9] and DISMISSES WITHOUT PREJUDICE Ground One

of Mars' Petition [Doc. No. 1] as UNEXHAUSTED and DISMISSES WITH

PREJUDICE Ground Two of Mars' Petition [Doc. No. 1] as UNTIMELY. The Court

DENIES a certificate of appealability.

IT IS SO ORDERED this 21st day of February 2024.

JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CLARISSA MARIE MARS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. CIV-23-00606-JD |
| | ) | |
| TAMIKA WHITE, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

## **JUDGMENT**

Under Federal Rule of Civil Procedure 58(a), and in accordance with the Court's Order issued this date, the Court dismisses without prejudice as unexhausted Ground One of Petitioner's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [Doc. No. 1] and dismisses with prejudice as untimely Ground Two. The Court declines to issue a certificate of appealability.

ENTERED this 21st day of February 2024.

_____
JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

CLARISSA MARIE MARS,      )
                        )
        Petitioner,      )
                        )
v.                      )      Case No. CV 23-606-JD
                        )
TAMIKA WHITE,        )
                        )
        Respondent.    )

### NOTICE OF APPEAL

Notice is hereby given that Clarissa Marie Mars, Petitioner in the above-named

case, hereby appeals to the United States Court of Appeals for the Tenth Circuit from the

final judgment entered in this action on February 21, 2024.  (Docs. 16-17)

Respectfully submitted,

/s/ David Autry
David Autry, OBA #11600
1021 N.W. 16th Street
Oklahoma City, OK 73106
(405) 521-9600
(405) 521-9669 [fax]
dbautry77@gmail.com

Lawyer for Petitioner,
Clarissa Marie Mars

1

**Certificate of Electronic Filing and Service**

This is to certify that on this 5th day of March 2024, I caused the foregoing instrument to be filed with the Clerk of the Court using the ECF System for filing, with electronic service to be made via CM/ECF to Caroline E.J. Hunt and Jennifer L. Crabb, Oklahoma Assistant Attorneys General, and to all counsel of record.  To counsel's knowledge, there are no non-ECF registrants who are counsel in this case.

/s/ David Autry